# NORTON COMPANY *v.* DEPARTMENT OF REVENUE OF ILLINOIS.

No. 133. Argued December 6, 1950.—Decided February 26, 1951.

*Joseph B. Brennan* argued the cause for petitioner. With him on the brief were *Roland Towle, Mac Asbill* and *W. A. Sutherland.*

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *Ivan A. Elliott,* Attorney General, and *Raymond S. Sarnow* and *James C. Murray,* Assistant Attorneys General.

MR. JUSTICE JACKSON delivered the opinion of the Court.

Petitioner, a Massachusetts corporation, manufactures and sells abrasive machines and supplies. Under consent from the State of Illinois to do business therein, it operates a branch office and warehouse in Chicago from which it makes local sales at retail. These sales admittedly subject it to an Illinois Occupation Tax "upon persons engaged in the business of selling tangible personal property at retail in this State." The base for computation of the tax is gross receipts. Ill. Rev. Stat., 1949, c. 120, § 441.

Not all of petitioner's sales to Illinois customers are over-the-counter, but the State has collected, under protest, the tax on the entire gross income of this company from sales to its inhabitants. The statute specifically exempts "business in interstate commerce" as required

by the Constitution, and the question is whether the State has exceeded the constitutional range of its taxing power by taxing all of petitioner's Illinois derived income.

In Worcester, Massachusetts, petitioner manufactures some 225,000 items, 18,000 of which it usually carries in stock. There are its general management, accounting, and credit offices, where it accepts or rejects all direct mail orders and orders forwarded by its Chicago office. If an order calls for specially built machines, it is there studied and accepted or rejected. Orders are filled by shipment f. o. b. Worcester either directly to the customer or via the Chicago office.

The Chicago place of business performs several functions. It carries an inventory of about 3,000 most frequently purchased items. From these it serves cash customers and those whose credit the home office has approved, by consummating direct sales. Income from these sales petitioner admits to be constitutionally taxable. But this office also performs useful functions for other classes of customers. For those of no established credit, those who order items not in local stock, and those who want special equipment, it receives their order and forwards it to the home office for action there. For many of these Illinois customers it also acts as an intermediary to reduce freight charges. Worcester packages and marks each customer's goods but accumulates them until a carload lot can be consigned to the Chicago office. Chicago breaks the carload and reconsigns the separate orders in their original package to customers. The Chicago office thus intervenes between vendor and Illinois vendees and performs service helpful to petitioner's competition for that trade in all Illinois sales except when the buyer orders directly from Worcester, and the goods are shipped from there directly to the buyer.

The Illinois Supreme Court recognized that it was dealing with interstate commerce. It reiterated its former

holdings "that there could be no tax on solicitation of orders only" in the State.[1]  But no solicitors work the territory out of either the home office or the Chicago branch, although petitioner will supply engineering and technical advice.  The Illinois court held that the presence of petitioner's local retail outlet, in the circumstances of this case, was sufficient to attribute all income derived from Illinois sales to that outlet and render it all taxable.

Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller.  Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable.  *McLeod* v. *Dilworth Co.*, 322 U. S. 327.  Of course, a state imposing a sales or use tax can more easily meet this burden, because the impact of those taxes is on the local buyer or user.  Cases involving them are not controlling here, for this tax falls on the vendor.[2]

But when, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation on some Illinois sales only by showing that particular transactions are dissociated from the local business and interstate in nature.  The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption.[3]

This burden is never met merely by showing a fair difference of opinion which as an original matter might be

---

[1] 405 Ill. 314, 320, 90 N. E. 2d 737, 741.

[2] Cf. *Nelson* v. *Montgomery Ward & Co.*, 312 U. S. 373; *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359; *McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33; *McLeod* v. *Dilworth Co.*, *supra*.

[3] *Compãnia General* v. *Collector*, 279 U. S. 306, 310; *New York ex rel. Cohn* v. *Graves*, 300 U. S. 308, 316.

decided differently. This corporation, by submitting itself to the taxing power of Illinois, likewise submitted itself to its judicial power to construe and apply its taxing statute insofar as it keeps within constitutional bounds. Of course, in constitutional cases, we have power to examine the whole record to arrive at an independent judgment as to whether constitutional rights have been invaded, but that does not mean that we will re-examine, as a court of first instance, findings of fact supported by substantial evidence.[4]

This corporation has so mingled taxable business with that which it contends is not taxable that it requires administrative and judicial judgment to separate the two. We conclude that, in the light of all the evidence, the judgment attributing to the Chicago branch income from all sales that utilized it either in receiving the orders or distributing the goods was within the realm of permissible judgment. Petitioner has not established that such services as were rendered by the Chicago office were not decisive factors in establishing and holding this market. On this record, no other source of the customer relationship is shown.

This corporation could have approached the Illinois market through solicitors only and it would have been entitled to the immunity of interstate commerce as set out in the *Dilworth* case. But, from a competitive point of view, that system has disadvantages. The trade may view the seller as remote and inaccessible. He cannot be reached with process of local courts for breach of contract, or for service if the goods are defective or in need of replacement. Petitioner elected to localize itself in the Illinois market with the advantages of a retail outlet in the State, to keep close to the trade, to supply

---

[4] *Merchants' National Bank* v. *Richmond*, 256 U. S. 635, 638; *Carlson* v. *Curtiss*, 234 U. S. 103, 106.

locally many items and take orders for others, and to reduce freight costs to local consumers. Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, *Cooney* v. *Mountain States Telegraph Co.*, 294 U. S. 384, it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business.

The only items that are so clearly interstate in character that the State could not reasonably attribute their proceeds to the local business are orders sent directly to Worcester by the customer and shipped directly to the customer from Worcester. Income from those we think was not subject to this tax.

The judgment below is vacated and the cause remanded for further proceedings not inconsistent herewith.

*It is so ordered.*

MR. JUSTICE REED, dissenting in part.

MR. JUSTICE REED concurs with the Court's opinion and judgment except as it permits Illinois to use as a base for the tax computation petitioner's sales, consummated in Massachusetts by the acceptance of orders forwarded to petitioner there by its Illinois branch office, filled in Massachusetts, and shipped from Massachusetts directly, and not by transhipment through the Illinois branch, to the buyer. In those sales title passes to buyer in Massachusetts. Illinois concedes in its brief the above facts as to this class of sales. From those facts I conclude that, nothing else appearing, the shipment was at the buyer's cost and risk.

The Illinois statute recognizes that interstate business is not to be taxed. The transactions described above are interstate business.

The pull to permit each state to measure its tax by gross receipts from all sales with some slight relation to the taxing state is strong. The Constitution, however, puts the regulation of interstate commerce in the hands of the Federal Government. We have gone far in interpretation of the Constitution to allow a state to collect tax money, but in view of the delegation to the Federal Government of the power over commerce carried on in more than one state, we should preserve interstate commerce itself from taxes levied on it directly or on the unapportioned gross receipts of that commerce. *Greyhound Lines* v. *Mealey,* 334 U. S. 653; *Joseph* v. *Carter & Weekes Stevedoring Co.,* 330 U. S. 422; *Interstate Pipe Line Co.* v. *Stone,* dissent, 337 U. S. 662, 676.

Our closest approach to the tax on the above interstate business was the tax on DuGrenier, Inc., in *McGoldrick* v. *Felt & Tarrant Mfg. Co.,* 309 U. S. 70, 77. Despite marked differences between the DuGrenier transactions and all others considered in *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33, without analysis of the effect of those differences and in reliance upon the fact that "possession" was transferred in New York from the transportation company to the buyer, we upheld the tax. If by the language used it was meant to say that the seller delivered the goods to the buyer, the transactions were, as we said, "controlled" by *Berwind-White.*

A few years later, however, in *McLeod* v. *Dilworth Co.,* 322 U. S. 327, an opinion in which the writer of the *DuGrenier* opinion, Chief Justice Stone, joined, we made it clear that a tax cannot be collected by the buyer's state on orders solicited in one state, accepted in another, and shipped at the purchaser's risk. That later clarifying holding seems to me to state the true rule applicable here. I can see no difference, constitutionally, between solicitation by salesmen in a branch office or on the road. Such sales, consummated by direct shipment to Illinois buyers

from out of the state are interstate business and free of the tax Illinois has levied. So far as the Supreme Court of Illinois holds those transactions taxable, it should be reversed.

Mr. Justice Clark, dissenting in part.

I believe the respondent reasonably attributed all of the proceeds of petitioner's sales in Illinois to the company's local activities. I therefore agree with the Illinois Supreme Court that under the circumstances shipments sent directly to Illinois customers on orders sent directly to Worcester were subject to the tax.

As the Court points out, petitioner can avoid taxation on its direct sales only "by showing that . . . [they] are dissociated from the local business and [are] interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption." Petitioner has failed to meet this burden. In fact Illinois has shown that petitioner's Chicago office is its only source of customer relationship in Illinois; that the Chicago office provides the sole means through which petitioner can be reached with process by Illinois courts in the event a customer is aggrieved; that the local office affords service to machines after sale, as well as replacement of machines which are defective; that it stands ready to receive complaints and to offer engineering and technical advice; and that these multitudinous activities give to petitioner a local character which is most helpful in all its Illinois operations. Surely the Court's conclusion, that "Petitioner has not established that such services as were rendered by the Chicago office were not decisive factors in establishing and holding this market," applies with equal validity to the direct sales.

In maintaining a local establishment of such magnitude, petitioner has adopted the label of a home-town merchant.

After it has received the manifold advantages of that label, we should not give our sanction to its claim made at taxpaying time that with respect to direct sales it is only an itinerant drummer. For the foregoing and other reasons which need not be stated, I would affirm in its entirety the judgment below.

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join in this opinion.