ARTHUR WALTER SEED COMPANY, ETC. *v*.
MCCLURE, TREASURER, ETC.

[No. 29,392. Filed May 2, 1957. Rehearing denied June 5, 1957. Writ of Certiorari to the United States Supreme Court denied December 16, 1957.]

*Gilbert M. Alsop,* of Vincennes, *K. Raymond Clark,* and *James J. Costello, Jr.,* both of Chicago, Illinois, for appellant.

*Lewis & Funk* and *James J. Lewis,* of Vincennes, for appellee.

*Edwin K. Steers,* Attorney General, and *Lloyd C. Hutchinson,* Deputy Attorney General, *Amicus Curiae.*

LANDIS, J.—This case involves the question of whether seed corn stored in appellant's warehouse in Indiana, where it had been transported from Illinois, remained an article of interstate commerce[1] and thus exempt from Indiana personal property tax, or whether it had acquired a taxable situs in Indiana so as to be subject to the tax.

According to appellant's complaint it is an Illinois Corporation having its principal office in Grand Ridge, Illinois, and is admitted to do business in Indiana. That prior to March 1, in each of the years 1951 and 1952, appellant shipped seed corn from Illinois into Indiana against orders previously received and accepted from purchasers in Illinois and Indiana. The orders provided for delivery of the corn by appellant to the purchasers, at places designated by the purchasers, at spring planting time.

The corn was consigned to appellant at its warehouse in Knox County, Indiana, and title thereto remained in appellant until delivery to purchasers subsequent to March 1, with appellant paying cost of maintaining warehouse and delivering corn to the purchasers.

All processing and bagging operations on the corn were performed by appellant in Illinois, and after its receipt in Knox County, Indiana, it was merely stored until the time specified for delivery to purchasers.

Appellant alleges the shipment of the corn to the Knox County warehouse in advance of the delivery date was necessary for an orderly distribution in interstate com-

---

1. Article 1, §8, cl. 3 of the U. S. Constitution known as the "Commerce Clause" precludes a state from taking any action impeding the free flow of trade among the states. *Freeman* v. *Hewit* (1947), 329 U. S. 249, 67 Sup. Ct. 274, 91 L. Ed. 265.

merce, allegedly because of uncertainties in weather conditions.

Appellant further alleges the corn on March 1 of each year was in interstate commerce and had not acquired a situs in Indiana for Indiana property tax purposes. Appellant asks for a declaratory judgment in its favor and an injunction restraining appellee from collecting the tax.

Appellee county treasurer filed demurrer to the complaint for want of facts, contending that under the facts alleged interstate commerce was at an end and said shipment was taxable by Indiana. The demurrer was sustained and appellant appeals from the judgment for appellee rendered on appellant's refusal to plead over.

The first case cited by appellant in support of its contention that the shipment in the case before us remained in interstate commerce despite its temporary interruption is *Champlain Realty Co.* v. *Brattleboro* (1922), 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195. In that case the state of Vermont attempted to tax logs cut in Vermont and being floated down a stream in that state for delivery in New Hampshire. The logs were under the control of the owner at all times and had been stopped on the assessment date by a boom at the mouth of a river to prevent them from entering a joining river in which the water was too high for safe transit. The Supreme Court distinguished the facts from the case of *Coe* v. *Errol* (1886), 116 U. S. 517, 6 S. Ct. 475, 29 L. Ed. 715, and upheld the immunity of the logs from local state taxation while the owner had the logs detained by the boom and said at pp. 373, 374, 376 of 260 U. S., at pp. 148, 149 of 43 S. Ct.:

> "[The boom] was not used by the owner for any beneficial purpose of his own except to facilitate the safe delivery of the wood . . . [in New Hampshire], on their final journey already begun. The logs were

not detained to be classified, measured, counted, or in any way dealt with by the owner for his benefit, except to save them from destruction in the course of their journey, that, but for natural causes, over which he could exercise no control, would have been actually continuous. . . ."

. . . .

"The interstate commerce clause of the Constitution does not give immunity to movable property from local taxation which is not discriminative unless it is in actual continuous transit in interstate commerce. When it is shipped by a common carrier from one state to another, in the course of such an uninterrupted journey, it is clearly immune. The doubt arises when there are interruptions in the journey, and when the property, in its transportation, is under the complete control of the owner during the passage. If the interruptions are only to promote the safe or convenient transit, then the continuity of the interstate trip is not broken. . . . interstate continuity of transit is to be determined by a consideration of the various factors of the situation. Chief among these are the intention of the owner, the control he retains to change destination, the agency by which the transit is effected, the actual continuity of the transportation, and the occasion or purpose of the interruption during which the tax is sought to be levied."

The next case relied on by appellant is *Hughes Bros. Timber Co.* v. *Minnesota* (1926), 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359, in which Minnesota attempted to collect personal property tax from the seller of logs placed on the ice and banks of Swamp river for shipment to Michigan. The tax was assessed May 1, and several days prior thereto the ice from the river had broken and the logs were proceeding downstream. Eighteen days later the logs reached the boom on Lake Superior where the logs were to be loaded as promptly as possible on vessels of the buyer for shipment across the lake to Muskegon, Michigan. The court held the logs to be in inter-

state commerce, and at pp. 475, 476 of 272 U. S., at p. 172 of 47 S. Ct., stated:

"The conclusion in cases like this must be determined from the various circumstances. Mere intention by the owner ultimately to send the logs out of the state does not put them in interstate commerce, nor does preparatory gathering for that purpose at a depot. It must appear that the movement for another state has actually begun and is going on. Solution is easy when the shipment has been delivered to a carrier for a destination in another state. *It is much more difficult when the owner retains complete control of the transportation and can change his mind and divert the delivery from the intended interstate destination as in the Champlain Co. Case.* The character of the shipment in such a case depends upon all the evidential circumstances looking to what the owner has done in the preparation for the journey and in carrying it out. The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if the other facts show that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation, as in the Champlain Co. Case. Here the case is even stronger in that the owner and initiator of the journey could not by his contract divert the logs after they had started from Swamp River without a breach of contract made by him with his vendee, who by the agreement of sale divided with him the responsibility for the continuous interstate transportation." (Emphasis supplied.)

Appellant cites the case of *Carson Petroleum Co.* v. *Vial* (1929), 279 U. S. 95, 49 S. Ct. 292, 73 L. Ed. 626, in which oil was shipped from another state into Louisiana and placed in storage tanks to await transportation facilities for export. The shipper always had orders on hand in excess of the quantity of oil in Louisiana. Delivery of the oil so sold was accomplished by loading aboard ship and prior to such delivery, the risk of loss remained with the shipper. The court held the oil to be

in interstate commerce and not subject to Louisiana tax while in storage awaiting further transportation facilities for export. It distinguished the case of *General Oil Co.* v. *Crain* (1908), 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754, which had held oil shipments into Tennessee where the oil was separated into separate containers before further shipment outside the state, were subject to Tennessee tax as the redistribution of the oil at Memphis was a rest interrupting the journey and the tanks there were an assembling entrepot. The court mentions the artificial rearrangement of tanks in a large entrepot for redistribution of oil to avoid previous taxability.

A case very close to the case at bar is the recent decision of *Norton Co.* v. *Department of Rev.* (1951), 340 U. S. 534, 71 S. Ct. 377, 95 L. Ed. 517, in which the Norton Company, a Massachusetts corporation under consent from the state of Illinois to do business therein, operated a branch office and warehouse in Chicago. The Chicago branch sold goods in stock over-the-counter to cash customers and those whose credit the home office had approved. It also received orders for items not in stock and special equipment, which orders were forwarded to the Massachusetts office for acceptance. The Massachusetts office packaged and marked each customer's goods and accumulated them until a carload lot could be consigned to the Chicago office and warehouse. At Chicago the carload was broken and the separate items ordered were reconsigned to customers in their original packages. Referring to the activity of the Chicago business situs, the U. S. Supreme Court stated at p. 536 of 340 U. S., at p. 379 of 71 S. Ct., as follows:

> "The Chicago office thus intervenes between vendor and Illinois vendees and performs service helpful to petitioner's competition for that trade in all Illinois sales except when the buyer orders directly from Worcester [Massachu-

setts], and the goods are shipped from there directly to the buyer.

. . . .

"... *when, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation ... only by showing that particular transactions are dissociated from the local business and interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption.*" [*Emphasis supplied.*]

. . . .

"This corporation could have approached the Illinois market through solicitors only and it would have been entitled to the immunity of interstate commerce. . . . But, from a competitive point of view, that system has disadvantages. The trade may view the seller as remote and inaccessible. He cannot be reached with process of local courts for breach of contract, or for service if the goods are defective or in need of replacement. Petitioner elected to localize itself in the Illinois market with the advantages of a retail outlet in the State, to keep close to the trade, to supply locally many items and take orders for others, and to reduce freight costs to local consumers. Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, Cooney v Mountain States Tel. & Tel. Co., 294 U. S. 384, 79 L. ed. 934, 55 S. Ct. 477, it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business."

Appellant has cited the case of *Binderup* v. *Pathe Exchange* (1923), 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308, which held the anti-trust laws applicable to interstate commerce applied to New York manufacturers of motion picture films who had leased the same to Nebraska exhibitors. The films were shipped by the New York manufacturers to their Nebraska agents for delivery to the Nebraska lessees. While conceding the factual situation in the cited case is

somewhat comparable to that in the case at bar, it is not believed the anti-trust cases are particularly helpful in determining the power of the states to impose a non-discriminatory tax on property which, although connected with the flow of interstate commerce, has come to rest and acquired a situs within the state.

See:

*Minnesota* v. *Blasius* (1933), 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131, citing *Swift* v. *United States* (1905), 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518; and *Stafford* v. *Wallace* (1922), 258 U. S. 495, 525, 526, 42 S. Ct. 297, 66 L. Ed. 735, 745, 746, 23 A. L. R. 229.

The court in *Minnesota* v. *Blasius* (1933), *supra,* at pp. 9, 10 of 290 U. S., at pp. 36, 37 of 54 S. Ct., said:

". . . the States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts as such, derived from it. Similarly, the States may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a State and become subject to the power of the State to impose a non-discriminatory property tax. Such an exertion of state power belongs to that class of cases in which, by virtue of the nature and importance of local concerns, the State may act until Congress, if it has paramount authority over the subject, substitutes its own regulation. . . ."

. . . .

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is demed to be a part of the general mass of property within the State and is thus subject to its taxing power."

The case of *Gross Income Tax Div.* v. *Surface Comb. Corp.* (1953), 232 Ind. 100, 111 N. E. 2d 50, cited by

appellant, is not applicable here, for that was a tax on receipts from interstate commerce.

To recapitulate the facts in the case before us, appellant, an Illinois corporation under consent from the state of Indiana to do business here, operated a warehouse in Knox County, Indiana. The seed corn was shipped by appellant from Illinois to its Indiana warehouse consigned to itself and arrived at the warehouse prior to March 1. Title remained in itself until delivery to the purchasers at *spring planting time*. Although the corn was shipped pursuant to orders received at the home office from purchasers, appellant concedes that "the fair inference from [the complaint] is that appellant retained the power to divert the corn from the orders against which it was originally shipped in interstate commerce."

Our courts take judicial notice of the seasons for the planting and harvesting of crops within their own jurisdiction, including facts of common knowledge concerning the time for the sowing or planting of such crops.[2]

In this connection we should note that it is a matter of common knowledge and understanding among persons engaged in agriculture that the recommended time for the planting of corn in southern Indiana [which area includes Knox County, Indiana] is approximately from May 10 to May 20.[3]

As the seed corn in question in this case admittedly was to remain in the appellant's warehouse from a date prior to March 1 until spring planting time, it follows

2. 31 C. J. S., Evidence, §29b, pp. 557, 558; 20 Am. Jur., Evidence, §76, pp. 96, 97; *Abel* v. *Alexander et al.* (1874), 45 Ind. 523, 528, 15 Am. Rep. 270; *Ross* v. *Boswell* (1877), 60 Ind. 235; *Poke* v. *Peerless Fdry. Co.* (1954), 124 Ind. App. 544, 119 N. E. 2d 905.

3. Purdue University, Agri. Exten. Service, Entomology Dept., Mimeo E-17, April 1953, Rev. April 1955.

that such corn necessarily was therein stored for a period in excess of 60 days during which time appellant could divert the shipment to other purchasers as he pleased.

Appellant is obviously engaged in running a warehouse in Indiana under consent procured from the state with all the flexibility of movement and discretion required to enhance the further sale of its product and to compete with local business. The protection afforded shipments in interstate commerce does not contemplate or envision the warehouse activity engaged in by appellant. The commerce clause does not extend to articles previously in interstate commerce but which are placed in the shipper's warehouse far in advance of the date of pretended delivery, so as to permit the shipper, without local tax liability, to engage in a warehouse business for his personal profit and benefit. The right of subsequent diversion of previous interstate orders to new customers at appellant's discretion gives appellant's warehouse the attributes of a local business.

Under such circumstances appellant's warehouse becomes an entrepot or depot for the redistribution of appellant's product as mentioned in the Coe[4] and Crain[5] cases. The interruption of transit was not reasonably intended for the furtherance of orderly interstate commerce, but rather to enable appellant to compete on a local basis to its personal advantage.

As stated in the *Norton* case, *supra,* at p. 537 of 340 U. S., at p. 380 of 71 S. Ct.:

"But when, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation . . . only by showing that particular transactions are dissociated from the

4. *Coe* v. *Errol* (1886), 116 U. S. 517, 6 S. C. 475, 29 L. Ed. 715.
5. *General Oil Co.* v. *Crain* (1908), 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754.

local business and interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption."

In our opinion appellant has not in any wise discharged that burden.

Appellant has made a procedural contention that the allegations of its complaint containing such conclusions as that the goods were "in transit in interstate commerce" are necessarily admitted by appellee's demurrer filed thereto. However, the specific allegations of the complaint set out in detail the particular circumstances of the shipment here in question including the date of shipment to the warehouse, appellant's ownership and control over the goods, the time of contemplated delivery to the purchasers, appellant's warehouse activity and its submission to the state of Indiana for the purpose of doing business in the state. It is our opinion that such allegations prevail over the general allegations, for it is a general rule that specific averments in a pleading must be given precedence over general averments regarding the same matter. Or, in other words, if the pleader goes beyond the general allegations of a complaint and sets forth the specific facts which he claims constitute the situation which entitles him to recover, the specific averments may overbear the general and render the pleading vulnerable to demurrer.[6]

From the foregoing discussion it is necessarily our conclusion that the seed corn here in controversy was no longer in interstate commerce, but had acquired a taxable situs in Indiana for purposes of personal property tax, and that the demurrer was properly sustained to appellant's complaint.

6. See: *Schisler* v. *Merchants Trust Co.* (1950), 228 Ind. 594, 602, 94 N. E. 2d 665; 41 Am. Jur., Pleading, §33, p. 312, 71 C. J. S., Pleading, §56, p. 143.

Judgment affirmed.

Achor, C. J., and Bobbitt and Emmert, JJ., concur.
Arterburn, J., not participating.

NOTE.—Reported in 141 N. E. 2d 847.