Berkshire Fine Spinning Associates, Inc., Respondent, *v.* City of New York et al., Appellants.

First Department, July 3, 1958.

*Stanley Buchsbaum* of counsel (*Bernard H. Sherris* and *John J. Lyden* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellants.

*Truman Henson* of counsel (*Robert D. Cole* with him on the brief; *Robinson & Henson,* attorneys), for respondent.

M. M. FRANK, J. In this action for a declaratory judgment the defendant, the City of New York, appeals from an order which denied its motion for summary judgment and from the summary judgment entered in favor of the plaintiff. Special Term decided that the New York City General Business and Financial Tax Law * was unconstitutional insofar as it applied to the plaintiff's activities in New York City, and that the tax levied against it was invalid. The plaintiff was awarded a refund of the tax assessments for the years 1947, 1948 and 1951, which had been paid under protest. The judgment necessarily imported the finding that the plaintiff was exclusively engaged in interstate commerce and that its local activity was *de minimis.*

Although the plaintiff posed a second issue when it also attacked the validity of the tax upon the ground that the formula adopted by the comptroller was arbitrary and discriminatory, Special Term was not required to reach the question in view of its determination. Nor can we pass upon it, unless it is reached upon a reversal of the first issue raised.

---

* The City of New York imposes a gross receipts tax for the privilege of doing business in New York City (Administrative Code of City of New York, § B46–2.0, subd. a). The tax is authorized by the New York State Enabling Act (General City Law, § 24-a).

As authorized by the New York State Enabling Act, the defendant imposes a gross receipts tax for the privilege of doing business in New York City. The applicable allocation formula under which the plaintiff paid the tax for the years in question was promulgated by the comptroller of the City of New York pursuant to the power granted to him under the Administrative Code (Comptroller's Regulations, art. 211).

Whether the local functions of a foreign corporation are merely incidental to its activities in interstate commerce or whether they are of such a character as to enable it to establish itself in and hold the community market, thereby subjecting it to the local tax, is most frequently a fact question. With that in mind, an analysis of the local activities of the plaintiff is appropriate.

As culled from the complaint, the affidavits submitted by the plaintiff and the examination before trial of its officers, the facts immediately following are undisputed.

The plaintiff, a Massachusetts corporation, authorized to do business in the State of New York, never held a stockholders' or directors' meeting in New York City.

It sold textiles consisting of greige goods (textiles in unfinished and unbleached state), finished fabrics, curtain materials and curtains, all of which it manufactured in plants located in Rhode Island, Massachusetts and Vermont. It had offices in Providence, Rhode Island, through which it purchased cotton in the South for shipment to those of its factories where the raw cotton was processed and woven into greige goods. With some exceptions, hereinafter noted, the manufacturing skill, and the required plant direction and supervision were provided either at the plaintiff's Providence office or at its factories.

The plaintiff maintained two separate offices in New York City, strategically located for the customers that each served. The one catering to the curtain trade was located at 261 Fifth Avenue and the other, in the Worth Street textile area, dealt with cotton goods. (Since both were operated as an integrated unit, we shall refer to them in the singular.) The New York City office was supervised by 3 vice-presidents, and employed some 85 to 95 people, including salesmen, clerical personnel, a credit manager and other administrative clerical personnel. The salesmen obtained orders in the form of oral proposals to buy, which first were delivered to their department heads and then transmitted to the vice-president in charge of the division involved. When customers agreed to pay the prices previously set for the goods and the orders created no production diffi-

culties, the New York City office entered into contracts of sale. Only if a large order involved problems of availability of goods, production schedules, or a price less than the established one, would the Providence office or the mills be consulted, but in any case, the New York office closed the contract. Orders or proposals obtained by salesmen assigned out of State were processed in the same manner by the New York City unit, except that the transactions were conducted by mail.

No orders or contracts were accepted unless the credit of the customer had been checked and approved by a credit manager stationed in New York City. His powers and duties, and those of the personnel under his supervision, included the exercise of definitive discretion in approving orders from delinquent accounts, in accepting orders on a cash basis only, in withholding shipments to delinquent debtors, and in prohibiting further solicitation of business from customers no longer deemed desirable.

The New York office maintained all records and ledgers concerning sales and also processed the perpetual merchandise inventory records, which included all data of goods in process of manufacture and in transit. It maintained complete record control of shipments, in part comprising directions to the mills as to the time when and the place where deliveries to customers were to be made. Finished goods, constituting the bulk of the plaintiff's business, were billed from the New York office, whereas greige goods were billed from Providence.

Payment for merchandise sold was received in New York and deposited in New York City bank accounts, and employees in the local office were authorized to and did draw upon these accounts, although the plaintiff had other accounts in Providence and Boston banks.

The local office exercised substantial and considerable control over production. Mr. Kennedy, one of the plaintiff's vice-presidents stationed here, supervised a designing unit which purchased and developed designs for printed textiles, and he made decisions with respect to dyeing, printing, and other methods of finishing goods. The officers employed in the local office would estimate and determine future production requirements and direct employees in the Providence office as to the types of fabrics to be processed.

The authority of the New York office with respect to finished curtain materials was even more extensive, for in this division the instructions from New York were not channeled through Providence but were sent via closed circuit teletype directly to factories in Warren, Rhode Island.

Customer complaints, claims of merchandise defects or non-conformance with samples were processed through the New York office, as were the advertising and promotional activities.

From the complaint, it appears that the annual wages and salaries for services rendered in the City of New York between 1947 and 1953 ranged in progressively increasing scale from $139,000 to $592,000. While these items were small percentage-wise, in comparison with the total payroll, which included all factory labor costs, they do indicate expenses that exceeded those attributable solely to sales and promotion.

The tax return for 1947, filed by the plaintiff, valued average merchandise inventory in New York City at $193,356.26 and the returns for subsequent years valued this item from a high of about $115,000 to a low of $6,500. Thereafter, an affidavit by one of the plaintiff's accountants explained that the situs of this merchandise was not actually the city but independent finishing plants in New York State. Even if full credit is accorded the explanation, it would still be a fair inference that the merchandise so inventoried was charged to the New York office.

Based upon these local activities, the city imposed an apportioned gross receipts tax on the plaintiff for the privilege of doing business in New York City.

Upon the facts, it is evident that the plaintiff's local business operations extended substantially beyond the sale and promotion of its products. Its designs were prepared in New York City, after study of the local market indicated the desirability of colors, patterns and other items to be considered in the effort to competitively sell printed and finished goods. The directions for the manufacturing of goods for future sales and delivery given to the Providence office and to company plants, the checking of credits, the approval or withholding of ship-ments after sales were made and the maintenance of records which served to control production, save for the mechanical performance of manufacturing, all these require the rejection of the conclusion that this plaintiff " stayed at home ".

While it may be reasonably argued that some of the activities hereinbefore outlined were merely incidents in the transacting of interstate business, they should not be isolated from the total. It is a fair inference that all of the local activities were either necessitated by or designedly planned for the express purpose of vying advantageously with local competitors.

It is implicit in *Field Enterprises* v. *State* (47 Wn. [2d] 852, affd. 352 U. S. 806) and affirmatively stated in *Norton Co.* v. *Department of Revenue* (340 U. S. 534) that the taxpayer has

the burden of proof in seeking to establish the invalidity of a tax such as is involved here. (See, also, *Compania General* v. *Collector*, 279 U. S. 306, 310; *New York ex rel. Cohn* v. *Graves*, 300 U. S. 308, 316, affg. 271 N. Y. 353, which was a cert. proceeding.) That requirement appears reasonable upon analysis. As between the agency empowered to impose the tax and the taxpayer, the latter is in an infinitely better position to establish the factual proof with respect to the operative factors involved in the conduct of the business. To be relieved from the requirement to pay the tax levied, it is incumbent upon the taxpayer to establish the facts upon which the exemption is to be predicated. Moreover, the Administrative Code of the City of New York (§ B46–3.0) places the burden of proof upon the taxpayer. To what extent the comptroller may inquire in a hearing upon the filing of a protest to the tax laid, is not before us, but it is evident that in a plenary action, if he is to be restricted in his investigation of the facts surrounding the conduct of a business upon which a tax is levied, the taxpayer would be the beneficiary of an undue advantage.

If the plaintiff's activities in New York City were confined to solicitation of business and promotion, including such minutiae identified with those activities as *in toto* '' do not extend beyond ' drumming ' up business '', we would not hesitate, following *Matter of United Piece Dye Works* v. *Joseph* (282 App. Div. 60, 64, affd. 307 N. Y. 780, cert. denied 348 U. S. 916), to hold that the tax imposed was unconstitutional. But it is our considered view that the facts in this case are so markedly incomparable to those in *United Piece Dye Works* that our decision in that case is inapplicable here.

The decisions of the United States Supreme Court have within varying degrees clarified and limited the power of local governments to levy a tax for the privilege of carrying on business (*Western Live Stock* v. *Bureau*, 303 U. S. 250; *Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123; *Spector Motor Service* v. *O'Connor*, 340 U. S. 602; *Norton Co.* v. *Department of Revenue*, 340 U. S. 534; *Field Enterprises* v. *State*, 352 U. S. 806, affg. 47 Wn. [2d] 852; *McLeod* v. *Dilworth Co.*, 322 U. S. 327).

If the local activities of a vendor are merely incidental to conduct or transactions essentially in interstate commerce and '' forming an unbroken process of interstate commerce '', then the imposition of the local tax is tainted with illegality; conversely, however, if the vendor, as here, engages in activities designed essentially and exclusively for the local buyer then an apportioned tax is permissible. Perhaps the best analysis

for our purpose is that made by the Supreme Court in the *Norton* case (340 U. S. 534, 537, *supra*), when it said: "Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable."

Taxation of a local business whose activities are substantial and separable from the transportation which is in interstate commerce is not forbidden so long as the tax is fairly apportioned (*Western Live Stock* v. *Bureau,* 303 U. S. 250, *supra*). When all of the plaintiff's operations from beginning to end are considered, it becomes reasonably clear that its local activities rendered integrated services of which the manufacturing of textiles was merely a part. By channeling business through its New York office, the plaintiff gained the advantage of a local business. This was a local activity which went beyond the solicitation of business exclusively in interstate commerce for it included services rendered to its customers before and after shipment of the goods.

When the statement of facts in *Field Enterprises* v. *State* (47 Wn. [2d] 852, *supra*) is considered in conjunction with the undisputed facts in this case, the affirmance of the validity of the tax imposed on Field by the United States Supreme Court (352 U. S. 806, *supra*) becomes dispositive of the issue here.

On this record, we must hold as a matter of law, that the plaintiff's local activities were substantial and separable from those in interstate commerce and that it was subject to the tax levied. That being so, we reach the second problem posed.

The plaintiff contends that the allocation formula applied to it was arbitrary and discriminatory and therefore invalid. Assuming that the plaintiff is correct in its contention, we cannot, in this plenary action, afford it any relief.

It is now certain that the appropriate remedy for relief from an allocation formula promulgated by the comptroller in levying the New York City General Business and Financial Tax, is by protest to the comptroller, and upon his refusal to give relief, by the commencement of an article 78 proceeding (see *Matter of Gulf Oil Corp.* v. *Joseph,* 307 N. Y. 342; *Matter of Olive Coat Co.* v. *McGoldrick,* 287 N. Y. 769; *Olive Coat Co.* v. *City of New York,* 283 N. Y. 733; *Matter of McCall Corp.* v. *Gerosa,* 2 A D 2d 358). That the abbreviated time limitation for

the commencement of an article 78 proceeding bars the plaintiff from relief, furnishes no justifiable reason for the courts to sanction a plenary action in the absence of express legislation (*Przyborowski* v. *O'Connell*, 272 App. Div. 1096, affd. 297 N. Y. 940; *Colodney* v. *New York Coffee & Sugar Exch.*, 4 A D 2d 137, affd. 4 N Y 2d 698; *Gorham Mfg. Co.* v. *Tax Comm.*, 266 U. S. 265).

In sum, upon this record, it is our opinion that the plaintiff has failed to present a triable issue as a matter of law. The order and judgment below should be reversed on the law, the motion of the plaintiff for summary judgment denied and the cross motion of the defendants for a dismissal of the complaint granted. Costs to appellants.

BREITEL, J. (dissenting). It is not wise to substitute complex factual distinctions for standards heretofore applied in determining local privilege taxation to foreign corporations engaged in interstate transactions. To do so threatens discriminatory and even arbitrary treatment of the many interstate corporations present in this State and city. Moreover, it would engender a new spate of privilege tax litigation resulting in an extended period of uncertainty for tax collectors and taxpayers.

The Supreme Court of the United States, of course, delimits for the States the standards to be applied in determining local taxation of enterprises moving in interstate commerce. This it has done in many holdings applying the elaborated rationale of the Commerce Clause. If the existing standards have any validity, then the transaction of plaintiff corporation occurring in New York are interstate in character. And as such, they do not subject the corporation to local privilege taxation, however much the corporation may be subject to other forms of local taxation. On this view, the conclusion to this case is predetermined by *Matter of United Piece Dye Works* v. *Joseph* (282 App. Div. 60, affd. 307 N. Y. 780, cert. denied 348 U. S. 916).

If new standards are to be applied, and maybe they should, then the principles as expressed in the *United Piece Dye Works* case should be abandoned and the case frankly and explicitly overruled. The situation here cannot be distinguished from that in the *United Piece Dye Works* case under recent relevant standards. True, plaintiff has a more elaborate sales organization, with many more employees and many more executives in this State. There are also many elements of local supervision present, so cogently indicated in the majority opinion. Gener-

ally, then, plaintiff has a more extensive office and more personnel in this State — servicing sales, credit, design, limited production and inventory control, and claims — each associated generally with the solicitation of orders and sales of merchandise in the New York market from goods manufactured outside the State. (Nevertheless, even these New York incidents constitute but a minute portion of the widespread business operations of this large textile corporation — employing as it does 8,500 persons, and doing a business of over $74,000,000 in 1947.) On the other hand, in the *United Piece Dye Works* case, the taxpayer received 95% of its orders from the New York City market. But such quantitative analysis of sales activity is not the measure of localization of enterprise for purposes of privilege taxation (see *Norton Co.* v. *Department of Revenue,* 340 U. S. 534, particularly in the light of the separate dissents by Mr. Justice REED and Mr. Justice CLARK).

One circumstance present in this case and not present in the *United Piece Dye Works* case is that many of the agreements of sale were closed in this State. This circumstance alone has never been made a basis for local privilege taxation (see, e.g., Powell, "New Light On Gross Receipts Taxes", 53 Harv. L. Rev., 909). Rather, the prime, albeit not the exclusive, "taxable event" has been the delivery — the transfer of possession — in the taxing State. And the facts here are quite clear that all deliveries were f.o.b. the seller's out-of-State mills (*McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33). Should the Supreme Court eventually hold, as it well might, that the closing of the sales agreement standing alone is a proper standard for determining subjection to local privilege taxation the case would, of course, be on an entirely different bottom.

The decision of the Supreme Court in *Field Enterprises* v. *State* (352 U. S. 806) presents a problem. In that case there was no elaboration of the court's reasoning. It is therefore impossible to say what was the Commerce Clause basis for the affirmance of the State judgment. Adding to the difficulties is that the affirmance was solely on an ex parte statement of jurisdiction filed, without argument, pursuant to rule 12 of the Rules of the Supreme Court of the United States. On this slender ex parte presentation barely outlining the issues, the Supreme Court affirmed, two Justices noting probable jurisdiction. In the *Per Curiam* opinion, only a few lines long, the court cited *Norton* v. *Department of Revenue (supra)*. But this citation casts little light on the question with which the Supreme Court then and this court now is concerned. (At least one commentator has been similarly troubled, Strecker, "'Local Incidents' of Interstate Business", 18 Ohio St. L. J. 69.)

If in fact the affirmance in the *Field* case means that the Supreme Court adopted the views of the Supreme Court of the State of Washington, then, clearly, more is required here than distinguishing the facts in this case from those involved in the *United Piece Dye Works* case. For the fact complex in the *Field* case, if it had occurred here, would, under the rulings in this State, require a holding that Field Enterprises had never become localized sufficiently to allow local privilege taxation. The reverse would also be true: If the *Field* case affirmance means all that it potentially means, then the *United Piece Dye Works* case was wrongly decided, despite the denial of certiorari by the Supreme Court.

Consequently, if the *Field* case is to be viewed as the city urges, then this court should simply overrule the *United Piece Dye Works* case. Such a result would allow the State and city to impose with rational uniformity local privilege taxation on all foreign corporations where the selling transactions are so extensive within the State as to amount to affording a " local grip " on the seller by the taxing unit. Then, too, the converse expression of the test might be whether the services provided in the local office were " decisive factors in establishing and holding " the local market (see *Field Enterprises* v. *State*, 47 Wn. [2d] 852, 856, affd. 352 U. S. 806; cf. *Norton* v. *Department of Revenue, supra*; *United Piece Dye Works* v. *Joseph, supra*, see dissenting opinion by CALLAHAN, J., where this tenable view was forcefully taken, but rejected in this court and in the Court of Appeals).

Before, however, the State courts should effect so drastic a reversal of position, it would seem wiser to await clearer direction from the Supreme Court. In the light of the history of the *Field* case before the Supreme Court, there is not sufficient basis for erecting, in the State courts, an entirely new set of principles with economic and legal ramifications unexpressed, to be implied only at the peril of great economic and governmental uncertainty.

In view of the holding by the majority, and the view taken here, it is not necessary to discuss at any length the question raised as to the allocation formula and the remedy available. The question is novel and important. There is no authority to support the view that the statutory remedy is the exclusive one, as distinguished from being merely available, where the allocation formula is invalid. Assuming that the making of the allocation formula is the exercise of a quasi-legislative function by the comptroller it raises no different problem than one created by an unconstitutional statute. If that be so the

plenary remedy would be available (see *Mercury Mach. Importing Corp.* v. *City of New York,* 1 A D 2d 337, 339, revd. on other grounds 3 N Y 2d 418 and the authorities cited therein). The statutory remedy would then fall with the statute as extended by the discriminatory formula and made invalid thereby.

Accordingly, I am constrained to dissent and vote to affirm the judgment and order granting plaintiff summary judgment and to affirm the order denying defendants' motion to dismiss the complaint for insufficiency.

RABIN and McNALLY, JJ., concur with M. M. FRANK, J.; BREITEL, J., dissents and votes to affirm in opinion, in which BOTEIN, P. J., concurs.

Order and judgment reversed on the law, the motion of the plaintiff for summary judgment is denied and the cross motion of the defendants for a dismissal of the complaint is granted, with costs to appellants.

Settle order.