KING MERRITT & COMPANY, INC., Complainant,

*v.*

ROBERT E. WORRALL, etc., Defendant.

368 S.W. 2d 745.

*(Nashville,* December Term, 1962.)

Opinion fled June 4, 1963.

KENNETH L. ROBERTS, ROBERT G. McCULLOUGH, Nashville, for complainant.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, Nashville, for defendant.

MR. JUSTICE DYER delivered the opinion of the Court.

In this opinion King Merritt, Inc., a New York corporation will be referred to as complainant, and Robert E. Worrall, County Clerk Court of Davidson County, Tennessee as defendant.

Complainant paid under protest certain privilege taxes levied by Item 16(b), Sec. 67-4203, T.C.A., and instituted this suit to recover same. From an adverse decision of the Chancellor complainant has seasonably appealed to this Court.

Complainant, a New York corporation with its principal office in New York City, is engaged in business as a broker-dealer in securities being duly registered with the Securities and Exchange Commission and with the Securities Departments of some forty-eight states where they operate. Their operation is a selling organization of commission salesmen offering to the investing public shares in the various mutual funds, and using their principal office as the key to their operations have established local offices in the principal cities using one of their commission salesmen as a local manager. The function of the local manager besides being a commission salesman is to obtain and train other commission salesmen to sell for complainant through the local office. In addition to the commission on his own sales the local manager receives

an override on the sales made by the other men in the local office. These local offices are held under lease to complainant with the rent paid by complainant, and such are designated by having complainant's name placed thereon. The telephone is listed in complainant's name and the basic charges paid by complainant. The necessary furniture is supplied by complainant and if a secretary is needed in the office she is paid by complainant. In the case of a few of these local offices the manager pays the expense of same and in such cases he receives a larger commission on his sales.

These salesmen as registered representatives of complainant are required to sell securities only for complainant, but, except as required by rules of the securities commissions are not under the control of complainant. When a salesman obtains an order he has the investor execute a form furnished by complainant, which in effect directs complainant to purchase certain securities for the investor. This executed application form is forwarded through the local office to the New York office where it is either accepted or rejected. If the application is accepted complainant from New York notifies the investor they have purchased for him the requested securities, and in the normal course of business the securities are forwarded from New York to the investor. Payment is made by the investor forwarding such to complainant in New York, which can be done by the investor after he has received confirmation of his purchase from New York, or at times the salesman may include payment with the application form. The securities are forwarded from New York direct to the investor unless the investor requests they be sent through the local office.

An officer of complainant corporation testified they held

these local offices in their own name as a good business practice to protect their locations, and if one of their local managers were to go with another company they would not be without an established place of business.

Item 16(b) of Section 67-4203, T.C.A. is as follows:

"Every person soliciting or accepting orders for the purchase or sale of any stocks, bonds, or other securities, or dealing in stocks, bonds, grain or cotton, shall pay on each office or agency, per annum, as follows:

In cities of 100,000 inhabitants or over_____$200.00
In cities of 20,000 to 100,000 inhabitants_____ 100.00
In cities of less than 20,000 inhabitants_____  50.00

"Provided that each person, firm or corporation above having less than five (5) executives and/or agents shall pay one-half (½) the tax in the above classifications."

Counsel for complainants in a very excellent brief state their position as follows:

"Briefly summarized, complainant's position was, and is as follows: The tax imposed by Item 16(b) is upon 'soliciting' or 'accepting' orders for securities or 'dealing' in same. It is not upon the activity of 'doing business' or 'engaging in business.' Under the facts, all orders solicited in Tennessee are accepted outside Tennessee. The facts further show that complainant's dealing in securities in Tennessee consists of no more than the solicitation of such orders which are sent outside of Tennessee for acceptance or rejection and which, if accepted, are filled outside Tennessee and the certificates transmitted to Tennessee. Thus the tax must fall upon the activity of soliciting, if at all. However, such activity is conducted exclusively in interstate commerce. Therefore, the imposition of said tax upon

complainant constitutes a burden on interstate commerce, contrary to Article I, Section 8, Clause 3, of the Constitution of the United States.''

Counsel for complainant state further in their brief:

''It is well established under Tennessee and United States Supreme Court precedents that a privilege tax imposed upon the activity of solicitation of orders for goods, which orders are sent outside the taxing state for approval and, upon acceptance, are filled by shipment from without such state, is violative of the commerce clause. (Citing Authority).''

The above statement by complainant is true, which counsel for defendant admit. The position of defendant is that such is not controlling in the case at bar, since the commerce clause provides no protection to a foreign seller who comes into a state and establishes himself there in a local outlet for his product, and in support of their position cite the recent case of *Norton Co. v. Department of Revenue,* 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517.

The Norton case involved the liability of a Massachusetts corporation under the Illinois retail sales tax. The Massachusetts corporation maintained an office and warehouse in Chicago where it carried an inventory of its products, and further used the Chicago location to channel orders to the Massachusetts office to be filled. Orders received in Chicago on items in inventory there were consummated by the Chicago office, and it was not disputed on orders to Illinois residents consummated in the Chicago office there was tax liability. The State of Illinois sought however to tax all sales in Illinois including not only those consummated at the Chicago office, but

also those with which the Chicago office only acted as an intermediary to channel the order on to the Massachusetts office. The Court in this case said:

"Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable. * * * But when, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation on some Illinois sales only by showing that particular transactions are disassociated from the local business and interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption. * * *

"This corporation has so mingled taxable business with that which it contends is not taxable that it requires administrative and judicial judgment to separate the two. We conclude that, in the light of all the evidence, the judgment attributing to the Chicago branch income from all sales that utilized it either in receiving the orders or distributing the goods was within the realm of permissible judgment. Petitioner has not established that such services as were rendered by the Chicago office were not decisive factors in establishing and holding this market. On this record, no other source of the customer relationship is shown.

"This corporation could have approached the Illinois market through solicitors only and it would have been entitled to the immunity of interstate commerce as set out in the Dilworth Case [*McLeod v. J. E. Dilworth Co.,* 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304]. But, from a competitive point of view, that system has disadvantages. The trade may view the seller as remote and inaccessible. He cannot be reached with process of local courts for breach of contract, or for service if the goods are defective or in need of replacement. Petitioner elected to localize itself in the Illinois market with the advantages of a retail outlet in the State, to keep close to the trade, to supply locally many items and take orders for others, and to reduce freight costs to local consumers. Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, *Cooney v. Mountain States Telephone & Telegraph Co.,* 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934, it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business." 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517.

Complainant argues the Norton case is not in point, since the factual basis upon which the tax was allowed to stand in the Norton case is not present in the case at bar, and in their brief state:

"The present complainant does *not* have a warehouse or office in Tennessee in which an inventory of securities is maintained and from which direct sales are made to Tennessee customers."

It is true there is a factual difference in these cases.

It is also true complainant is not engaged in the same type of business as in the Norton case; in fact complainant keeps no stock of securities at any place but purchases them on order. The establishment and operation of these local offices are more than incidental to the operation of a wholly interstate business. Complainant has by these local offices elected to localize itself in the Tennessee market and gain the advantage of local business. We think the factual situation presented here brings this case within the holding of the Norton case.

We have had the benefit of most excellent briefs pointing up the question for decision.

Judgment affirmed.