HOPKINS, J.T.C.,
concurring and dissenting.
I concur in the majority’s conclusion that the IP gain, together with the interest on the deferred payment on the sale of CIP shares, are both properly included in the total income to be used in the computation of its New Jersey CBT liability. I disagree both with the reasoning and conclusion that IP’s gain on the sale of its Bard stock should be excluded. Such conclusion is based on the erroneous findings that the Bard stock ownership *168 was a “passive” investment because IP exercised no control over Bard, and further, that the two companies were not in the same line of business. Such are not the tests.
There is no dispute as to the methodology used by New Jersey to compute an allocable income for foreign corporations doing business in New Jersey. Such allocation formula is commonly used in state taxation. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984). In contesting the inclusion of the gain realized on the sale of its Bard stock, IP claims that such was excludable as a “passive” investment. Such position is contrary to the specific holding in Silent Hoist & Crane v. Taxation Div. Director, 100 N.J. 1, 494 A.2d 775 (1985), cert. den. 474 U.S. 995, 106 S.Ct. 409, 88 L.Ed.2d 359 (1985).
The facts show that IP acquired all of the stock of Davol Corp. for $100 million in 1968. Included in Davol’s assets were 702,000 shares of Bard stock. IP allocated $25,272,000 of the $100 million purchase price to the Bard stock. In 1972, the Bard stock was split bringing IP’s ownership to 1,404,000 shares.
Between the acquisition of the Davol stock and November 1971, the Bard stock had been transferred to IP. On November 1, 1971, IP, and Chase Manhattan, as trustee to which IP transferred the Bard stock, issued IP subordinated debentures in the aggregate amount of $53.3 million. Those funds were used by IP to retire short-term indebtedness. The subordinated debentures were exchangeable for Bard stock at any time after 1972 at a specified exchange rate. The agreement between IP and Chase Manhattan provided that if IP acquired any of the debentures, it could obtain the escrowed Bard stock which was applicable to those acquired debentures. Prior to 1982, IP acquired $5.6 million of the debentures, thus obtaining possession of the allocable Bard stock. In September 1982, IP sold 148,078 of the reacquired shares for $5,941,629.70, and realized a gain of $2,276,502. The Director included such gain in IP’s total income for allocation in computing the CBT.
*169 In Silent Hoist, supra, the Court focused on the inclusion of investment income in the net income base. The taxpayer, a New York corporation, had its principal place of business and its manufacturing plant in Brooklyn, New York. It owned two parcels of real estate in New Jersey, one of which had been intended as a new location for its plant. It had obtained a certificate of authority to transact business in New Jersey and had made between 8% and 18% of its total sales in New Jersey during the tax years involved. In filing its CBT returns, it restricted its New Jersey income to the New Jersey real estate operations. Upon audit, the Director increased its income to include the sales income. In contesting the Director’s determination, Silent Hoist also claimed that in filing its CBT returns, it had erroneously included income from its investments, including capital gains, in total corporate income. That is the same issue presented here.
In Silent Hoist, our Court pointed out that taxpayer was a one-man operation. He coordinated the New Jersey real estate operations, the investments and all sales operations. Under such circumstances, the Court held:
Silent Hoist meets the test, in Exxon terms, of enjoying the “benefits from an umbrella of centralized management and controlled interaction.” 447 U.S. at 224, 100 S.Ct. at 2120, 65 L.Ed.2d at 81. The interaction between the various aspects of plaintiff’s business need not involve measurable flows of cash. Eather, the question is whether there have been “unquantifiable transfers of value * * * among the components of a single enterprise.” [100 N.J. at 18, 494 A.2d 775; citations omitted]
Further, commenting on the applicable test for the determination of a unitary business, it was stated:
The test to be developed here involving one corporation is whether the unities apply within the internal operations of Silent Hoist. The focus must be on Silent Hoist’s investment activity and other aspects of its corporate business and the role the investment activity plays in those other activities. [Id. at 19, 494 A.2d 775]
The Court then pointed to the need to face economic reality in stating that:
All that the Supreme Court asks is that we assure ourselves that there be “some sharing or exchange of value not capable of precise identification or measurement — beyond the mere flow of funds arising out of a passive investment or a distinct business operation.” [Id. at 22, 494 A.2d 775]
*170 In applying the above principles, the Silent Hoist Court recognized that it was not dealing with consolidated returns, income of subsidiaries or foreign commerce issues. It was dealing with the inclusion of dividend, interest and capital-gains income of a single taxpaying corporation doing business in New Jersey. It appropriately stated, “Concededly, one such entity may not be unitary. But it is a rare case.” Id. at 18, 494 A.2d 775.
Silent Hoist, in the analysis of investment capital of a single taxpaying corporation, stated:
As we have seen, Silent Hoist’s investment capital was capable of being pledged, liquidated or converted to other uses of the company’s sales and real estate operations. To describe this economic power as passive does not reflect economic reality. [Id. at 22, 494 A.2d 775]
In the subject case, there was not only the capability that the Bard stock be pledged, it was actually used in the issuance of debentures to obtain financing to retire IP’s short-term indebtedness. This exemplifies the recognition, by the Silent Hoist Court, of the manner in which investments can play a part in the total unitary business.
The above principles and analyses of an individual corporation’s net income for CBT purposes must also be considered in light of the statement contained in Container Corporation of America v. Franchise Tax Board, supra. That case is the latest United States Supreme Court opinion on the issue here involved. Not only did it correct misconceptions which had flowed from the Woolworth and ASARCO cases on which the majority places undue emphasis; it went on to state, quoting from Norton Co. v. Department of Revenue, 340 US. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951), that:
The general rule, applicable here, is that a taxpayer claiming immunity from a tax has the burden of establishing his exemption.
This burden is never met merely by showing a fair difference of opinion which as an original matter might be decided differently____ Of course, in constitutional cases, we have power to examine the whole record to arrive at an independent judgment as to whether constitutional rights have been invaded, but that does not mean that we will re-examine, as a court of first instance, findings of fact supported by substantial evidence. [463 U.S. at 175-176, 103 S.Ct. at 2945-2946; emphasis supplied in Container opinion]
*171 After stating the above legal principle, the Container Court went on to say:
It will do the cause of legal certainty little good if this Court turns every colorable claim that a state court erred in a particular application of those principles into a de novo adjudication, whose unintended nuances would then spawn further litigation and an avalanche of critical comment. Rather, our task must be to determine whether the state court applied the correct standards to the case; and if it did, whether its judgment “was within the realm of permissible judgment.” [463 U.S. at 176, 103 S.Ct. at 2946]
In Silent Hoist, our highest Court has held that the portfolio income of a foreign corporation, doing business in New Jersey, is properly includable in the taxable base income on the theory that there existed an exchange of value between such income and the New Jersey business activities. The fact that Silent Hoist was a “one-man corporation,” and that IP is a corporation with professional centralized management, is a distinction without a difference for the purpose of allocating investment income.
I would conclude that the Bard stock investment was part of the unitary business of IP and any gain on its sale was properly included in the computation of its New Jersey CBT.