(No. 31196.

NORTON COMPANY, Appellant, *vs.* THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed January 18, 1950—Rehearing denied March 20, 1950.*

GUNN, J., dissenting.

HANSEN & TOWLE, of Chicago, (ROLAND TOWLE, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, Norton Company, a corporation, filed its claim for credit with the Department of Revenue of the State of Illinois for taxes paid under the provisions of the Retailers' Occupation Tax Act which, it is claimed, were not due under the provisions of the act. From a decision of the Department adverse to appellant on the principal issues involved, a complaint was filed in the circuit court of Sangamon County seeking a review under the provisions of the Administrative Review Act. The court affirmed the decision of the Department and the appellant appeals to this court because the revenue is involved.

Appellant, a Massachusetts corporation, has its plant and main office in the city of Worcester in that State. It manufactures and sells abrasive and grinding machines and products and keeps 18,000 items on hand in its Worcester inventory. It maintains an office and warehouse in Chicago, Illinois, where it keeps an inventory of about 3000 of its items. There are no salesmen used by appellant, but it does have a group of engineers available to consult with prospective customers on their needs. These engineers do not solicit or take orders for goods.

Appellant does not ask for a credit for taxes paid on sales made out of the Chicago inventory to customers in Illinois, but does object to payment on sales supplied from Worcester, where the orders were sent direct to the home

office and filled and shipped from Worcester, and in those cases where the inventory in Chicago could not supply an order and the material was shipped from Worcester. The shipment on sales involved in the claim for credit were in some instances sent direct from the factory to the customer in Illinois, and on other occasions were sent from Worcester in separately packaged lots *via* the Chicago office and warehouse for re-shipment to the purchaser in the original packages. It is the contention of appellant that the receipt of orders through its home office or through the Chicago office, followed by the shipment of the article directly from the factory in Massachusetts to the customer in Illinois, does not constitute the doing of business in Illinois so as to make such sales subject to the Retailers' Occupation Tax Act. The corporation further contends that such sales are specifically excluded from tax liability by the act. Also, it is claimed that such a tax is a burden upon interstate commerce which is prohibited by section 8 of article I of the Federal constitution.

The primary question before this court is whether the retailers' occupation tax, based upon sales of goods for consumption in Illinois, as represented by shipments of appellant from its plant in Massachusetts, infringes on the commerce clause of the Federal constitution by laying a burden on interstate commerce. Section 8 of article I of the constitution, declares: "The Congress shall have Power * * *; To regulate Commerce with foreign Nations, and among the several States, * * *." When the State of Illinois imposes a tax for State purposes, does this tax impinge upon the power granted to the Federal government to regulate commerce by the aforementioned clause? There have been various measuring sticks, starting with *Brown* v. *Maryland,* 12 Wheat. 419, which stated the "original package" doctrine. Many interpretations have been announced since that case, but the whole problem and the preceding cases were discussed and explained by Chief

Justice White in *American Steel & Wire Co.* v. *Speed,* 192 U.S. 500. The Justice, summarizing, stated that the ruling question was not whether interstate commerce depended upon goods in movement or whether their movement had been completed or terminated, but that the essence of illegality depended upon whether a State's exertion of taxing power "operated upon interstate commerce as to amount to a regulation thereof, in conflict with the paramount authority conferred upon Congress." He continued that "the tax did not amount to a regulation in the sense of the Constitution, although its levy might remotely and indirectly affect interstate commerce." In this particular decision Justice White overthrew the contention that "a tax on goods in original packages as shipped in interstate commerce was necessarily a burden upon interstate commerce."

We are faced with a similar decision here. Taxation upon the use of articles by residents of a State has been maintained time and time again by the Supreme Court of the United States. In *Nelson* v. *Sears, Roebuck & Co.* 312 U.S. 359, and *Nelson* v. *Montgomery Ward & Co.* 312 U.S. 373, it was even declared permissible to require the retailer to act as collector of the tax within the State, and the court in those cases indicated that immunity to taxes by an interstate retailer is limited to those who merely solicit orders and do not maintain retail outlets in the taxing State. In *General Trading Co.* v. *State Tax Com.* 322 U.S. 335, the court upheld collection of a tax even though the out-of-State company did nothing but solicit and deliver orders within the taxing State.

There is no doubt that we are dealing with interstate commerce in the present case. As was said in *Central Greyhound Lines* v. *Mealey,* 334 U.S. 653, "The difficult task of determining whether a phase of commerce, concededly interstate, is subject to a particular incidence of State regulation, through taxation or otherwise, is not lessened by calling interstate commerce local commerce in order to

sustain its local control. To state this persistent and protean problem of our federalism in the form of a question-begging fiction, is not to answer it."

The essence of constitutionality as determined by the commerce clause is no longer, if it ever was, determined by whether a State provision directly affects interstate commerce. The point to be considered is whether the interstate commerce is unconstitutionally burdened by the State regulation. (*Central Greyhound Lines* v. *Mealey,* 334 U.S. 653.) In the case cited there was involved a State tax on that portion of a bus-line ticket on an interstate trip which represented the mileage traversed within the State of New York. The journey involved was clearly interstate, yet the court held that the State did have a right to tax that exact percentage portion of the commerce with which it was intimately connected, *i.e.*, the mileage traversed within the State. It was said that the test as to the unconstitutional burden upon interstate commerce is whether a tax caused the particular section of commerce to carry more than "a fair share of the cost of the local government whose protection it enjoys." The trend of recent Supreme Court decisions is based upon this concept, the basic purpose of the commerce clause being regarded as the prevention of any particular State from isolating itself by its own acts from the rest of the United States, or of the creation of unfair discrimination by any State against the products of another State. The result of this modern trend is that a tax, such as the Illinois retailers' occupation tax, which may be "fairly apportioned to the business done within the state by a fair method of apportionment," is not considered unconstitutional. *Western Live Stock* v. *Bureau of Revenue,* 303 U.S. 250.

Appellant relies strongly upon *Adams Mfg. Co.* v. *Storen,* 304 U.S. 307, which had to do with a tax on gross receipts levied by the State of Indiana on the vendor upon goods manufactured in the home State and sold in all other

States. The tax was declared unconstitutional by the Supreme Court because it made other States carry the burden of the increased sales price from the taxation, since the State of Indiana collected all the tax upon the sales made in other States without segregation or apportionment. It was held that a State must restrict its taxing activities to that particular part of a business which is particularly connected with the taxing State, and must not extend its taxing power to business conducted in other States. The same underlying principle was prevalent in *Bowman* v. *Continental Oil Co.* 256 U.S. 642, *Monamotor Oil Co.* v. *Johnson*, 292 U.S. 86, and *Henneford* v. *Silas Mason Co.* 300 U.S. 577.

Appellant also contends that sustaining this tax would be allowing the State of Illinois to tax an out-of-State resident and, as a matter of public policy, the tax should be borne by those who can protest it within the State. Appellant is in no different position in this regard than would be a retailer within the State and we cannot say that in this particular case it is any burden on appellant, or an attempt to tax beyond the borders of the State.

The cases decided by this court, upon which appellant principally relies in its argument that it is exempt from taxation on the shipments from its warehouse in Massachusetts to customers in Illinois, are *Ex-Cell-O Corp.* v. *McKibbin*, 383 Ill. 316, *Ayrshire Patoka Collieries Corp.* v. *Nudelman*, 383 Ill. 345, and *Allis-Chalmers Mfg. Co.* v. *Wright*, 383 Ill. 363. It will be noted that in the *Ex-Cell-O* case the objecting taxpayer had no office or warehouse in Illinois and solicited orders through what were called "manufacturers' representatives" with acceptance of the order and consummation of the sale occurring in another State. In the *Ayrshire case,* the orders for coal mined and shipped from another State were taken in this State by solicitors who had no power to accept or reject orders given to them, all of which were filled and de-

livery made to a common carrier in an outside State. In the *Allis-Chalmers case,* the objector maintained two local offices where the agents only solicited orders in Illinois, the goods being shipped from Wisconsin upon acceptance of the orders. This court, in each case, explicitly placed the exemption from taxation on the ground that there could be no tax on solicitation of orders only, the court, in each instance, finding as a matter of fact that solicitation was the extent of objecting taxpayers' transactions in Illinois. On the other hand, we have held that a business which includes the taking of orders, the making of contracts, agreeing upon terms, receiving the payment and all other elements of the sale except delivery and transfer of title, is a business engaged in in this State and subject to the retailers' occupation tax. (*Standard Oil Co. v. Department of Finance,* 383 Ill. 136). Appellant's business, as conducted within Illinois, comes within this last definition of a taxable business under the Retailers' Occupation Tax Act. It has an office and warehouse in Chicago from which it fills any orders made directly to that office, if the product is in the Chicago warehouse. If all, or a portion, of the items are not available at Chicago, the order is sent to appellant's home factory in Massachusetts. This is a business engaged in in this State. It is true that appellant does not complain about the tax on the orders filled in the Chicago office, but we cannot make the same distinction as does appellant on obligations under the Retailers' Occupation Tax Act.

It was never intended that interstate commerce should not bear its own share of taxation. There would be no doubt that the State could tax sales made by the appellant if it were an Illinois corporation selling to customers in this State. It would be inequitable to say that the same corporation should not pay a similar tax when it manufactures out of the State and ships and sells within the

State. On the same basis, foreign corporations should not receive preference in business competition over business within the State by being exempt from paying such tax. By making the appellant pay, as in the situation before us, the State is not making an out-of-State company pay more than its fair share of the taxation burden. It is not attempting to tax gross receipts of appellant nor to tax goods which are sold or consumed or used in other States. The State is only making appellant pay the same tax as is required of its own citizens.

The tax claimed by the State upon the orders filled from the warehouse in Massachusetts, either on orders sent to the Chicago office or to the Massachusetts office, does not affect or hinder commerce in transit crossing the State. It does not isolate or segregate the State from the rest of the Union, nor does it erect barriers which place an out-of-State business at a disadvantage in competing locally within the State. Appellant, by conducting an office, merchandise warehouse and outlet in this State, is placed on the same footing with all other retail business outlets. As such, it is subject to bear its share of taxation which the State of Illinois believes those retail outlets should assume, whether they are foreign or local. Appellant is licensed to do business within this State, it sells to consumers within the State, and to exempt it from the taxes here involved would give appellant an unfair advantage over other retail establishments in the same trade.

For the reasons above stated, the judgment of the circuit court approving the administrative decision of the Department of Revenue is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting.