254 P.2d 1029

**ARIZONA STATE TAX COMMISSION et al.**
**v. ENSIGN et al.**

No. 5609.

Supreme Court of Arizona.
March 24, 1953.

Rehearing Denied May 14, 1953.

See 257 P.2d 392.

---

Fred O. Wilson, Atty. Gen., and Richard C. Briney, Asst. Atty. Gen., for appellants. Snell & Wilmer and Edward Jacobson, of Phoenix, for appellees.

UDALL, Justice.

The Arizona State Tax Commission has appealed from an adverse judgment "reluctantly" entered by Judge Windes of the Superior Court of Maricopa County in a "suit for recovery of taxes illegally collected". Such an action is provided for in Article II, Section 17, of the Excise Revenue Act of 1935, now appearing as Section 73–1318, A.C.A.1939. The learned trial Judge considered himself bound by a previous decision of this court even though he thoroughly disagreed with the conclusion.

Appellees Ensign and Kempson, plaintiffs below, are partners engaged, among other things, in the business of selling, installing and servicing deep well turbine pumps in Arizona. They have a "Dealers Agreement" with Layne & Bowler, a California corporation, whereby they handle only Layne & Bowler pumps, and have exclusive selling rights in Arizona.

The appellant Commission made a privilege tax assessment based on appellees' unreported sales as disclosed by an audit covering a two-year and four-month period. Appellees protested the assessment in part, being an amount of $2,554.12, which covered transactions hereinafter described. The Commission, after a hearing, denied the protest and appellees brought suit to review said ruling.

Approximately four-fifths of appellees' business, over which there is no controversy consists of sales to Arizona users, which sales include installation. Upon these sales an excise tax is paid to Arizona. The transactions in controversy constituting approximately one-fifth of appellees' business are as follows: Appellees receive an order for a complete pump or component parts from a large Arizona user, such as Phelps Dodge Corporation or Goodyear Farms Co., that has available trained personnel and engineers who can make the required installation or repairs. Appellees then place an order on their forms for the requested pumps or parts from the manufacturer. If the order is accepted by Layne & Bowler, they deliver the pump, freight prepaid, f. o. b. to a common carrier in Los Angeles, the Arizona user being shown as consignee on the bill of lading. Appellees collect from the user on such terms as they choose to give, and later they remit to the manufacturer.

The question presented, which is basically the same question the court had before it in the case of Pratt-Gilbert Hardware Co. v. O'Neil, 64 Ariz. 393, 173 P.2d 91; On Re-

hearing 65 Ariz. 90, 174 P.2d 620 is: are sales of merchandise made by a licensee under the Excise Revenue Act of 1935, Laws of 1935, Ch. 77, as amended, now appearing as Section 73-1301 et seq. A.C.A. 1939, to be included in the gross proceeds of sales against which the rate is applied, where such sales have been consummated by delivery f. o. b. to the purchaser in another state?

The language of the act pertinent to the inquiry is:

Sec. "73-1303. Imposition of tax.— From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money * * * annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule:

*     *     *     *     *     *

"(c) At an amount equal to two (2) per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, except bonds and stock. * * *"

Sec. "73-1308. Constitutional prohibition.—The taxes herein levied shall not be construed to apply to transactions in interstate commerce which, under the Constitution of the United States, the state of Arizona is prohibited from taxing * * *."

■ The tax imposed by the act is not a sales tax as such but is a tax upon the *privilege of engaging in business* measured by the amount or value of business done. State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549. Subsection (c) 1, supra, levies privilege taxes at the rate of 2% of the gross proceeds of sales or gross income from the business of a person engaged, within this state, in the business of selling tangible personal property at retail. The taxable event under the act is the engaging in business within the state.

A person may engage, within the state, in a business that is either intrastate, interstate, or both intrastate and interstate in character. This is most easily seen from the operation of carriers. A carrier may be engaged in the business of transporting freight or passengers between different points inside the state, or through the state, or between points inside the state and points outside the state. Apart from the constitutional question of the right of the state to tax business in interstate commerce, which will be discussed later, it is clear that a tax upon the privilege of engaging in business within the state, if not limited,

includes and applies to interstate as well as to intrastate business.

■ The tax is not a fee fixed, equal in all cases, but is measured by an application of rates to different indicia of the "amount or value of business done". The different indicia—set out in the act as values, gross proceeds of sales, or gross income—are applied as may be required by the specific nature of the business done. Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684.

As the tax assessed is measured by using the yardstick prescribed for a given case, it is apparent that, if so written, a tax upon the privilege of engaging in business might be levied upon a business that is both interstate and intrastate in character, and yet be measured by the "amount or value" of the intrastate part of the business alone, or of the interstate part of the business alone, or may be upon a combination of both. Under our statute the tax is upon the privilege of engaging in business measured by the amount or value of business done within the state of whatever character. Subsection (c) 1, supra, applies the 2% rate upon the applicable indicia, "gross proceeds of sales or gross income", without a limitation to sales made "in the state".

Had the legislature intended to measure the tax by sales made only in Arizona it would doubtless have included in subsection (c) 1 the phrase "in the state" or "in this state", as it did in the business of transmitting long distance messages by telephone or telegraph, or of transporting for hire freight or passengers by motor vehicle or railroad, or of transporting products such as oil or gas in pipes or conduits where the transmission or movement is between points "in this state". Also, where the transmissions or movements are through the state or between a point inside and a point outside the state, the tax is "imposed only upon such part of such business as is transacted or performed within this state". See the case of Standard Oil Co. v. Dept. of Finance, 383 Ill. 136, 48 N.E.2d 514, 516, where the facts required the court to construe a statute similar to ours before and after an amendment. Prior to the amendment the act read in part:

"A tax is imposed upon persons engaged in the business of selling tangible personal property at retail in this State at the rate of three per cent (3%) of the gross receipts from such sales in this State * * *."

The amendment omitted the words "in this State" where they appear the second time. The court held that as amended "The omission of the words 'in this State' in the amendatory act removes the limitation, as to the location where the sales must occur, that the gross receipts can be used for computing the tax."

■ As any question of the power of Congress to regulate interstate commerce, or a conflict therewith resulting from an exercise of the taxing power of the state,

must be determined under the Constitution of the United States, the decisions of the United States Supreme Court are controlling. The question before us and related ones falling within this class are not novel.

The following statement by the Supreme Court of Washington taken from the case of B. F. Goodrich v. State, 38 Wash.2d 663, 231 P.2d 325, 328, certiorari denied 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659, finds ready acceptance by us:

" * * * Article 1, section 8, of the Federal constitution, of course, gives to the Congress the power to regulate commerce among the several states; and it has been assumed that this clause restricts the states as to the manner in which they may tax an interstate business. The nature and extent of the restriction, however, remain matters of great uncertainty. In the plethora of cases which have arisen on the subject within recent years, the United States supreme court has been concerned with striking a balance between two conflicting principles: (1) that interstate commerce should be protected from undue interference by state taxation, and (2) that the commerce clause is nevertheless not intended to allow such commerce to escape paying its way. In resolving these principles, the court has not always been doctrinally consistent, and at least from the time (1938) of Western Livestock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944, the relevant cases have been confusing and contradictory in rationale. * * * "

The most recent case from the United States Supreme Court and which must control in the instant case is Norton Co. v. Dept. of Rev. of Illinois, 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517, decided February 26, 1951. The Washington court followed it in the Goodrich case, supra. Therefore, we shall not attempt to distinguish the earlier cases such as McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 338, 84 L.Ed. 565, 128 A.L.R. 876.

In the Norton case the appellant, a Massachusetts corporation, with home office at Worcester, manufactured a large line of abrasive machines and supplies. It maintained a branch office in Illinois from which it made sales to Illinois residents and furnished engineering and other services. Some of the sales to Illinois residents were made out of inventory or through several different types of transactions that involved in various ways, that we need not detail, both the branch office and the home office. Some sales were made under facts similar to the case before us, i. e., by the purchaser placing an order for merchandise through the branch office, with delivery directly to the customer by shipment f. o. b. Worcester. The court held the Norton Company could be taxed, under a statute similar to ours, for all sales to Illinois residents except where the order was sent directly by the

user to the home office and delivery made f. o. b. Worcester. See also the excellent opinion of the Supreme Court of Illinois in the same case. Norton Co. v. Dept. of Revenue, 405 Ill. 314, 90 N.E.2d 737.

■ The U. S. Supreme Court has now resolved the conflict as set forth in the Goodrich case, supra, a little more in favor of the power of the states to require by taxation interstate commerce to pay its way. Therefore a state may, without unduly burdening interstate commerce, tax all the revenue or income—"gross proceeds of sales or gross income"—that is the result of a business's activities within the state. This is in accord with a tax on the proportion of business done within the state by a carrier engaged in interstate commerce.

Such a holding covers the case before us where all elements of the sales were effected in Arizona, with the exception of constructive delivery and the accompanying transfer of title resulting from the shipment f. o. b. Los Angeles. This is not the equivalent of saying the business allowed to be taxed is intrastate or Arizona business.

"The difficult task of determining whether a phase of commerce, concededly interstate, is subject to a particular incidence of State regulation, through taxation or otherwise, is not lessened by calling interstate commerce local commerce in order to sustain its local control. To state this persistent and protean problem of our federalism in the form of a question-begging fiction is not to answer it." Central Greyhound Lines v. Mealey, 334 U.S. 653, 68 S.Ct. 1260, 1264, 92 L.Ed. 1633.

The Supreme Court, speaking through Mr. Justice Jackson, in the Norton case, supra, said [340 U.S. 534, 71 S.Ct. 380]:

" * * * when, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation on some Illinois sales only by showing that particular transactions are dissociated from the local business and interstate in nature.

\* \* \* \* \* \*

" * * * Petitioner elected to localize itself in the Illinois market with the advantages of a retail outlet in the State, to keep close to the trade, to supply locally many items and take orders for others, and to reduce freight costs to local consumers. Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, Cooney v. Mountain States Telephone and Telegraph Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934, it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business."

The court then held that the Illinois judgment·

"* * * attributing to the Chicago branch income from all sales that utilized it * * * in receiving the orders * * *"

where

"* * * Petitioner has not established that such services as were rendered by the Chicago office were not decisive factors in establishing and holding this market * * *"

was permissible.

Appellees are not a branch office of the manufacturer, Layne & Bowler, but are an independent domestic business. The gross proceeds of this class of appellees' sales are the result of their business activities within the state. That this is or may be the consequence of appellees' favorable position as the exclusive local dealer of an established product is unimportant.

▪▪ Therefore we hold (1) that under the Excise Revenue Act of 1935, as amended, the gross proceeds from the sales in question are taxable, and (2) that the tax is not unconstitutional as casting an undue burden on interstate commerce. The Pratt-Gilbert decision is expressly overruled.

We desire to express appreciation for the excellent briefs filed by counsel for both parties in this case, which has materially lightened our work.

Judgment is reversed with directions to deny plaintiff any recovery.

STANFORD, C. J., PHELPS and LA PRADE, JJ., and GORDON FARLEY, Judge Superior Court, concurring.

NOTE: Justice WINDES, being disqualified, the Honorable GORDON FARLEY, Judge of the Superior Court of Santa Cruz County, was called to sit in his stead.