**350 P.2d 674**

**STATE TAX COMMISSION of the State of Arizona, Appellant,**

**v.**

**MURRAY COMPANY OF TEXAS, INC., a corporation, Appellee.**

**No. 6853.**

Supreme Court of Arizona.

March 30, 1960.

Rehearing Denied April 19, 1960.

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Stanley Z. Goodfarb, Asst. Atty. Gen., for appellant.

Evans, Kitchel & Jenckes, Jos. S. Jenckes, Jr., Morton M. Scult, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal by the State Tax Commission of the State of Arizona from a judgment against it in the sum of $14,213.-29 paid by plaintiff-appellee under protest following an additional assessment against it by the Commission in the above amount as and for a transaction privilege tax as provided for under the provisions of A.R. S. § 42–1301 et seq. The parties will hereinafter be designated as plaintiff and the Commission.

The facts are that plaintiff is a Delaware corporation with its principal place of business located at Dallas, Texas, and a branch office in Fresno, California. It is engaged in the manufacture of cotton gins

and prefabricated steel buildings which it sells in many states, including Arizona, as well as in foreign countries. It consigns a stock of gin repair parts to Food Machinery & Chemical Corporation at Phoenix, Arizona. These repair parts are sold by Food Machinery to its customers in Arizona, and it pays to the Commission the transaction privilege tax incident to such sales. Plaintiff exercises no control over the sales of such parts. Food Machinery handles said parts on a commission basis and at intervals remits to plaintiff the wholesale price thereof.

Plaintiff has as its sales representative in Arizona one W. J. Simmons who resides in Phoenix, and reports to the Fresno branch office. He solicits orders for plaintiff's products from persons and firms in Arizona. All sales of cotton gins and steel buildings are made pursuant to orders given to Simmons by customers or sent directly by the customer to plaintiff at Fresno or Dallas office. Simmons transmits orders procured by him to the Fresno office which are forwarded by it to the Dallas office for acceptance. Delivery of the gin machinery and steel buildings to customers are made on cars or trucks at Dallas. Billings are made and payments received either by the Fresno or Dallas office.

The contract between plaintiff and purchaser provides that "Any sales or use tax payable at source, that is or may be made effective and applicable to the goods and machinery embraced in this contract, shall be added to the purchase price." Where the tax has been paid by the customer it has been remitted to the Commission. If the purchaser did not pay such tax none was paid to the Commission.

It further provides that plaintiff will provide an erector (an expert in assembling and installing gins) if desired by the customer. The gin is (necessarily) shipped to the gin site in a knocked down condition and is there assembled. The purchaser agrees to install and operate the gin according to printed instructions furnished by plaintiff. When requested, the assembly, installation and testing is supervised by an erector furnished by plaintiff. The purchaser pays for services of the erector. The cost of assembly and installation is insignificant in comparison to cost of the gin. But they are necessary to the use for which it was intended.

Practically the same provisions are incorporated in the contract for the sale of steel buildings. The purchaser furnishes all labor for its erection except a superintendent and a helper who are furnished by plaintiff. The concrete work, plumbing and electrical work are the sole responsibility of the purchaser. These buildings are (Necessarily) shipped to customers knocked down. They are assembled in a short time at a small cost compared with cost of manufacturing. The assembling

of these buildings, like the gins, is necessary to their use for which they were intended. The superintendent and helper do no work except that inherent in the task of assembling them.

During the period here involved Joe E. May, who resides in Arizona, performed the work incident to gin machinery if requested by purchaser to do so. May receives his pay and directions from the Fresno office and makes his reports to that office. He receives his pay check and other mail from Fresno at his home address. May also repairs gins when desired by the gin owner. Occasionally a call for May is placed at Food Machinery office and relayed to May or given to him personally if he comes in. May is furnished an automobile by the company for his use, but he furnishes his own hand tools used in assembling or repairing gins. Some time in 1957 one Richard Milligan was employed in the same capacity as May and now resides in Phoenix. He also works out of the Fresno office.

It is immediately apparent that the facts in this case are quite different from the facts either in the case of Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029, or any of the other Arizona cases, or Norton Co. v. Department of Revenue, 405 Ill. 314, 90 N.E.2d 737; 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517. The cases upholding collection of a privilege tax are largely based upon the fact of an established business in the State.

It is the contention of counsel for the Commission however that the plaintiff had engaged in sufficient localized activities in this State to bring it within the rule enunciated in the Norton case, supra, and that this State may lawfully impose the privilege and transaction tax upon it under the provisions of A.R.S. § 42–1301 et seq. The stipulated facts are all set out above and the depositions of Messrs. Simmons and Jodis do not materially modify the facts extrinsically stipulated to be correct except that, in addition to being a salesman, Simmons testified he has engineering knowledge acquired through his employment of several years with plaintiff and that he keeps blueprints (of some kind presumably of gins). Also that he keeps a filing cabinet for his correspondence at the office of Food Machinery and sometimes, after visiting the gins and looking over the plant, he makes suggestions as to improvements in the installation then in use. This would appear to be a sales suggestion.

We perceive nothing of material benefit to plaintiff performed by Simmons different from what he might have performed as an ordinary salesman visiting the State periodically. We believe it to be indisputable that all sales of gins and steel buildings made pursuant to orders so-

272

licited by Simmons or sent by the customer direct to the Fresno office or to the Dallas office, accepted in Dallas, and machinery delivered to the customer on cars or trucks at Dallas, Texas, are interstate transactions.

■ The fact that it was necessary to ship both gins and houses knocked down and had to be assembled and installed at the site where it was to be used, and required experts to assemble and install them does not in itself convert it into an intrastate transaction. Nor does the fact that the contract of purchase provides that when requested by the purchaser to do so the plaintiff will provide an expert to supervise the assembly and installation of the gins at purchaser's expense make it intrastate in character; neither does the fact that the expert was an employee of plaintiff and lived in Arizona make it intrastate. Until such machinery is assembled and installed it is incapable of application to the use for which it was manufactured. The work of assembling and installing and the cost thereof is of comparative insignificance to the cost of manufacturing it.

Under the contract of sale and purchase of steel buildings the purchaser is made solely responsible for the concrete work, including foundation, plumbing and electrical work, and furnishes all labor for the erection of the buildings, except a superintendent and one helper who are furnished by plaintiff. Like the gin machinery, the erection of the steel building as to time consumed and costs are minor items when compared with the cost of manufacturing them.

Plaintiff's total sales of gins, steel buildings and repair parts in Arizona from January 1, 1954 to September 30, 1956, amounted to $1,180,621.62. The transaction and privilege tax was paid by plaintiff when the purchaser paid it but it was not paid otherwise. The amount paid under protest represents the amount of tax which the purchaser did not pay.

There is yet another fact to be taken into consideration before the issue here can be determined. Plaintiff consigned to Food Machinery & Chemical Corporation at Phoenix, Arizona, a stock of gin repair parts. Food Machinery as such consignee sells the parts on commission at its retail price and through its Riverside headquarters office pays the sales tax to the Arizona State Tax Commission, and periodically remits to plaintiff the wholesale price therefor. Plaintiff exercised no control over Food Machinery in its handling of its gin repair parts. The title to the repair parts sold by Food Machinery at all times remained in plaintiff until sold by Food Machinery.

■ We believe it to be the general law that a consignee of goods sold on consignment is the agent of the consignor,

however, unless otherwise agreed, it is a limited agency only for the purpose of selling the merchandise furnished it on consignment, which is generally held to be insufficient to constitute doing business in the state by the consignor. Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133; Yarbrough v. W. A. Gage & Co., 334 Mo. 1145, 70 S.W.2d 1055; Falls Rubber Co. v. La Fon, Tex.Com.App., 256 S.W. 577; Southwest General Electric Co. v. Nunn Electric Co., Tex.Com.App., 283 S.W. 781.

This fact therefore when taken into consideration with the other facts above-related we believe is insufficient to constitute a localization of its activities in the State of Arizona to the degree that we can say its sale of gins and steel buildings in the manner stated in the stipulation of fact, had the effect of transmuting what would otherwise be purely an interstate transaction into an intrastate transaction and subject it to the imposition of the privilege sales tax under the provisions of A.R.S. § 42–1301 et seq.

■ As we said in the outset this case possesses but little similarity to the Norton case, supra, and none whatsoever to the Ensign case, supra. The Norton case was actually operating a branch retail business in the State of Illinois by state permission and had thereby submitted itself to the taxing power of the state. The court said under such circumstances the burden devolved upon it to show that particular transactions were dissociated with the local business. This it had not done. Counsel using this as a premise undertakes to say that the burden is upon the Murray Company to make a like showing as to its sales of gins and steel buildings through Simmons or upon orders direct from their customers. If it were first shown that Murray Company had submitted itself to the taxing powers of this State and likewise to its judicial processes then the burden would fall upon the taxpayer claiming immunity from such tax. Until it does the law imposes no such burden upon it. The court also said that by localizing its business in Illinois the Norton Company had gained the advantages of a retail outlet in the state to keep close to the trade, to supply locally many items and take orders for others and to reduce freight costs to local consumers. The court then states:

"* * * Although the concern does not, by engaging in business within the State, lose its right to do interstate business with tax immunity, [citing case] it cannot channel business through a local outlet to gain the advantage of a local business and also hold the immunities of an interstate business." [340 U.S. 534, 71 S.Ct. 381.]

The court then held that orders sent directly to Worcester by the customer and shipped directly to the customer from Worcester were interstate in character.

It does not seem to be logical to say that the Murray Company occupies a similar position in Arizona to that occupied by the Norton Company in Illinois. In that state Norton Company had submitted itself not only to the excise tax law of that state by establishing a business there, but also to civil process of the courts of that state to redress any wrong a customer may have suffered. Murray Company certainly has not subjected itself either to the excise tax or to the legal processes of state courts in Arizona. We said in Reed v. Real Detective Pub. Co., supra, in which the Detective Publishing Company was shipping and selling their publication to the Arizona dealer on consignment, over whom it exercised no control as in the instant case, that the publishing company was engaged in interstate commerce. True, this was before the Norton case but the latter case has in no sense modified it. Considering all of the factual circumstances to which the parties have stipulated, they do not, in our opinion, put the plaintiff here in business in Arizona in any degree. They therefore are not subjected to the payment of our privilege sales tax.

This conclusion in nowise conflicts with the Ensign case, supra. Ensign and associates were engaged in business in Arizona, selling, servicing and installing deep well Turbine pumps in Arizona. They had a dealers agreement with Layne and Bowler of Los Angeles, a California corporation, whereby they were to handle only the Layne and Bowler pumps. Four-fifths of Ensign's business were sales made to Arizona users. This included installation. On these sales excise tax was paid. In that case Phelps Dodge Company at Bisbee, Arizona, ordered a pump from Ensign who forwarded the order to Layne and Bowler in Los Angeles for acceptance. They shipped the pump direct to Phelps Dodge Company, f. o. b. Los Angeles. Phelps Dodge Company paid Ensign for the pump on the terms he prescribed. Ensign later remitted to Layne and Bowler their sale price therefor. We held the taxing incident was engaging in business in Arizona and that the state could collect a tax on its gross proceeds of sale or gross income resulting from its business activities within the state. Ensign was doing business in the state and therefore was required to pay the excise tax provided by law for the privilege of engaging in business in the state measured by the gross income or gross proceeds of sales made by him. The Murray Company was not engaged in business in this state. We do not believe the case of B. F. Goodrich Co. v. State, 38 Wash.2d 663, 231 P.2d 325, changes the rule laid down in the Norton Co. case, supra. The court in the Goodrich case quotes with approval the pronounce-

ment in the Norton Co. case to the effect that even where a foreign corporation engages in business in another state it does not lose its right to do interstate business with tax immunity. The court used the Norton Co. case as its yardstick in determining both—what transactions were not taxable and those that were.

■ We have held more than once that findings of fact are unnecessary where the parties litigant have stipulated to the facts. Work v. United Globe Mines, 12 Ariz. 339, 100 P. 813; Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334.

In view of the conclusion we have reached however the trial court's findings of fact and conclusions of law become immaterial

Judgment affirmed.

STRUCKMEYER, C. J., JOHNSON, J., and HENDERSON, Superior Court Judge, concurring.

Note: Justice CHARLES C. BERNSTEIN, being disqualified, the Honorable LAURENS L. HENDERSON, Judge of Superior Court, Maricopa County, was called to sit in his stead and participate in the determination of this appeal.

UDALL, Justice (dissenting).

This case was tried in the lower court upon an agreed statement of facts, hence there is no conflict of evidence to be resolved. Under such circumstances it is well settled that this Court is in nowise bound by the conclusions of law drawn by the trial court. I have a deep and abiding conviction that my brethren of the majority, in affirming the judgment of the lower court, are departing from sound principles of tax law to the serious detriment of all other taxpayers in the State.

In my opinion the Court is improperly throwing a mantle of local tax immunity over plaintiff's manifold operations in this State which is not deserved. The case is really being decided upon the basis that plaintiff's sales and the doing of certain work incident thereto, are in the same class —for taxation purposes—as the sales made by an itinerant drummer who solicits orders in a State which are sent directly to the out-of-state home office for acceptance and filling or delivery back to the buyer. Concededly as to such sales, the State of the buyer has no local grip on the seller. McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304. I believe this reasoning utilizes an unwarranted premise as a basis for judgment; that in fact plaintiff's operations—hereinafter detailed—are as different from the old-style "drummer's" modus operandi as daylight is from dark.

The proper yardstick to apply is: has plaintiff, as an out-of-state concern, by its overall operations in Arizona so localized its activities as to permit it to compete on

an equal basis with local merchants? If it has then its sales are taxable in Arizona, otherwise not. Norton Co. v. Department of Revenue (cited in majority opinion); Hartman, State Taxation of Interstate Commerce, Dennis & Co., pp. 102, 103, 110. Furthermore, these activities, I believe, should be viewed from the position of the potential customer, i. e., can the buyer expect to receive the same service from plaintiff as he could from a local business selling cotton gins?

Let us examine plaintiff's localized activities as shown by the record. Generally these may be grouped into solicitation, stock of repair parts, availability of erection, service, and repair personnel. More specifically I point out

1. Plaintiff has residing here a full time sales representative who is on salary and commission, and this man took part in nearly every sale made in the area.

2. Plaintiff maintains in this state a stock of repair parts for its gins. These parts are on consignment to Food Machinery and Chemical Corporation, who handle the sales, but they are the property of plaintiff.

3. For the right to handle these parts on consignment, Food Machinery provides plaintiff's sales representative with desk space, use of telephone, and a telephone listing. Plaintiff and its employees make full use of these facilities, meeting customers there, meeting there themselves and using it as a base of operations.

4. The sales representative had available locally at this office the records, plans, and other material necessary for such technical and sales assistance as needed by its customers.

5. Plaintiff has resident here two highly trained and skilled "erectors" who—where called for by contract—erect, service, and repair the cotton gins sold.

It may well be that any one of these factors or activities taken separately would not justify Arizona imposing a tax, but it is the overall localized activities which must be considered in determining whether the facts are sufficient to predicate the tax. Norton case, supra. No two of these tax cases are the same and each must be judged upon its own peculiar facts. In my opinion the legal principles enunciated in the Norton case, and the Ensign case (75 Ariz. 220, 254 P.2d 1029), are controlling here. Perhaps, because of the local outlet feature, the facts are stronger than in the instant case. Nevertheless, I verily believe that plaintiff has by its overall activities subjected itself to taxation in Arizona, even though it has very studiously tried to escape it. To rule otherwise is to allow plaintiff a competitive advantage and discriminate by taxation against his local competitor. The tendency of late has been for the U. S. Supreme Court to draw a finer balance between two conflicting philosophies, thereby permitting the States to force operators such as plain-

tiff to bear their fair share of the tax burden.

Finally, it should be noted that plaintiff's total sales covered by the audit period of 2 years and 9 months amounted to $1,180,621.62. A tax of $8,857.29 was voluntarily paid on sales amounting to $442,864.48. Pray tell where is the difference between the localized sales on which the tax was paid, and the sales involved in this suit amounting to $737,757.14 upon which the State levied and collected a tax of $14,755.15? Factually it would appear that all the sales were either intrastate sales to begin with or, as I believe, the *localized activities* of plaintiff have removed them from the sacrosanct status of interstate sales. Certainly there is not an iota of proof which shows the sales in question here to be one whit different from those upon which the tax was paid. It is inconceivable that the tax is valid if it can be passed on to the purchaser but otherwise is invalid. This commingling strongly indicates tax liability. In such an anomalous situation it becomes all the more important that the "overall activities" be most carefully scrutinized. B. F. Goodrich Co. v. State, 1951, 38 Wash.2d 663, 231 P.2d 325, 330, 331, certiorari denied 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659.

For all of the foregoing reasons I would sustain the tax levied by the Tax Commission and reverse the judgment of the lower court granting plaintiff tax immunity.