773 P.2d 474

**DEPARTMENT OF REVENUE,**
Plaintiff–Appellant,

v.

**MOKI MAC RIVER EXPEDITIONS, INC., Defendant–Appellee.**

No. 1 CA–CIV 9878.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 24, 1989.

Review Denied June 13, 1989.

Robert K. Corbin, Atty. Gen. by J. Scott Halverson, Asst. Atty. Gen., Phoenix, for plaintiff-appellant.

Jennings, Kepner & Haug by D. Kim Lough, Phoenix, for defendant-appellee.

## OPINION

CORCORAN, Judge.

This appeal involves an attempt by the Arizona Department of Revenue to impose a transaction privilege tax on Moki Mac River Expeditions, Inc. The Department appeals from a summary judgment ruling holding the tax invalid.

## 1. *Facts and Procedural History*

Moki Mac is a Utah corporation with an office and principal place of business in Salt Lake City, Utah. Moki Mac is engaged in the business of providing river rafting adventures in various western states. Among the various trips is one on the Colorado River through Grand Canyon National Park in Arizona.

Moki Mac's customers make reservations through the Salt Lake City office. All payments are received in Salt Lake City. No reservations are made nor money accepted in Arizona. Moki Mac maintains no offices, agents or solicitors in Arizona. Moki Mac is neither registered with the Arizona Corporation Commission as a foreign corporation doing business in Arizona nor as a passenger carrier, and no contention is made that such registration is required.

Moki Mac's primary contact with Arizona is its delivery of the services contracted for in Utah. All but a very small portion of these services are delivered within the confines of parks and recreational areas belonging to the federal government. Moki Mac greets its customers at Lee's Ferry, located in the Glen Canyon National Recreational Area, and transports them down the Colorado River through Grand Canyon National Park to Diamond Creek, Arizona. Moki Mac pays fees to the National Park Service (NPS) for use of park areas. During all times that its employees and customers are in the park areas, they receive the services provided by the NPS to users of the parks. Although most of these services may be provided exclusively by the NPS, certain law enforcement activities, including search and rescue operations and civil and criminal investigations within Grand Canyon National Park, are also provided by Coconino County, a political subdivision of Arizona, through the county sheriff's office, pursuant to a Cooperative Agreement for Concurrent Criminal Jurisdiction at Grand Canyon National Park entered into between the County and the NPS.

The rafts and other equipment used by Moki Mac are leased from a Utah lessor. Moki Mac pays Utah workers' compensation payments and withholds Utah personal income taxes from employees' wages. Moki Mac does *not* pay sales, use or privilege taxes to Utah in connection with its river rafting trips.

Moki Mac does lease property within Arizona located outside of the national parks. This property consists of two acres at Badger Creek (a portion of which is used for parking vehicles), a storage building, a storage shed, a permanent dwelling, and a temporary dwelling. Moki Mac's owners and employees live in the dwellings between trips, and leave personal property there for up to 6 months. The storage facilities are used to store river trip supplies. Moki Mac also uses its leased facilities in Arizona as a staging area for its river trips. Its employees pack food, load rafts and clean up after trips on Arizona property.

Moki Mac refers its customers to persons or companies who are able to transport them across Arizona highways to and from the rafting trip location and who, in some instances, shuttle their cars across Arizona highways. Finally, Moki Mac purchases some perishable supplies in Arizona for the trips, and advertises in Arizona by mailing information to Arizona residents.

The Department of Revenue is the agency that makes transaction privilege tax assessments and collections pursuant to A.R.S. §§ 42–1301, *et seq.* In 1983, the Department audited Moki Mac's books and records for the years 1980–82 and issued a deficiency assessment for transaction privilege taxes due because of the Department's belief that Moki Mac's activities within Arizona were taxable as a "business charging admission fees for ... amusement" pursuant to § 42–1309(A)(1). The deficiency assessment was based only on taxes calculated on the Colorado River trips in Arizona and not on any trips conducted in other states.[1]

---

**1.** The Department originally included a penalty in its assessment but subsequently rescinded the penalty, and now seeks payment only of the tax and interest accrued. It appears from the record that the parties disagree on the amount of interest accrued. The trial court did not

Moki Mac protested the assessment in full. Although the Department's hearing officer proposed that the protest be granted, the director upheld the assessment. Moki Mac appealed to the Board of Tax Appeals which abated the transaction privilege tax after concluding that Moki Mac does *not* have sufficient business contacts with Arizona for imposition of the transaction privilege tax.

The Department then appealed to the superior court. After cross-motions for summary judgment, the trial court granted summary judgment for Moki Mac and held the imposition of the tax invalid, concluding as a matter of law that "the activity engaged in by [Moki Mac] within the state of Arizona does not constitute engaging or continuing in business within this State."

### 2. *Issues and Standard of Review*

■ On appeal we must decide whether the trial court erred in concluding that Moki Mac's activity within the state does *not* constitute engaging in or continuing in business in this state. No material issue of fact appears in the record. The trial court's ruling was a conclusion of law, which does not bind an appellate court. *Tax Comm'n v. Howard P. Foley Co.*, 13 Ariz.App. 85, 87, 474 P.2d 444, 446 (1970). This court is free to substitute its analysis of the record for that of the lower court. *Tax Comm'n v. First Bank Bldg. Corp.*, 5 Ariz.App. 594, 596, 429 P.2d 481, 483 (1967).

If we agree with the trial court that Moki Mac was not engaged in or continuing in business in Arizona within the provisions of the transaction privilege tax statutes, then our inquiry is at an end and the trial court's ruling will be upheld. If we conclude to the contrary, we must then address the additional issues whether the Department's taxation of Moki Mac's activities violates the Commerce Clause of the United States Constitution, and whether such taxation is preempted by federal regulations. *Cf. Arizona Corp. Comm'n v.*

adjudicate the correct amount of interest that would have accrued because it found the tax

*Media Products, Inc.*, 158 Ariz. 463, 467, 763 P.2d 527, 531 (App.1988); *Peabody Coal Co. v. State*, 158 Ariz. 190, 761 P.2d 1094 (App.1988).

### A. *Was Moki Mac Engaging in Business in Arizona so as to Subject It to Liability for Transaction Privilege Taxes?*

The Arizona legislature has imposed a privilege tax upon persons engaging in certain businesses in the state. The privilege taxes are measured by the gross proceeds of sales or gross income arising from such business activities and are used, among other things, to liquidate the outstanding obligations of state and county governments and aid in defraying the necessary and ordinary expenses of these governments. A.R.S. § 42–1306. "Business" is defined by the legislature to include "all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales." A.R.S. § 42–1301(1). Not only must the entity to be taxed be engaged in "business" within the state, but it also must be engaged in one of the specific types of business activities described in the statutes. The specific statutory provision under which the Department assessed taxes against Moki Mac is A.R.S. § 42–1309(A)(1), which imposes a transaction privilege tax upon the following:

A. [E]very person engaging or continuing in this state in the following business classifications:

1. Operating or conducting theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, billiard and pool parlors, bowling alleys, public dances, dance halls, boxing and wrestling matches and any business charging admission fees for exhibition, amusement or instruction, other than projects of

assessment to be invalid.

bona fide religious or educational institutions

. . . .

In arguing that the trial court's ruling invalidating the tax should be upheld, Moki Mac contends not only that it was not engaged in a specific business covered by the statutes, but that its activities within the state could not be considered to be a "business" within the meaning of the transaction privilege tax statutes.

■ We first consider Moki Mac's contention that its business operations do not fall under § 42–1309(A)(1). Moki Mac claims that the Department is attempting to tax it for operating an amusement place and that the facts fail to show that the river trips may be so classified.

The Department points out that the statute allows taxation not only for "[o]perating or conducting ... amusement parks" but also for "[o]perating or conducting ... any business charging admission fees for ... amusement." The Department does not contend that Moki Mac operates a place of amusement, but rather, contends that it operates a business that charges admission for amusement.

We agree with the Department that the statute applies to Moki Mac's river trips. That the river trips are an "amusement" and the cost of the trip is an "admission fee" for such amusement within the meaning of the statute cannot reasonably be disputed.

■ We next consider Moki Mac's argument that even if it is operating a business listed in § 42–1309(A)(1), it is not "engaged in business" within the state because none of the activities surrounding its taking reservations for rafting trips and receiving money for the reservations take place in Arizona. Moki Mac would have us hold that its providing rafting trips within Arizona cannot be considered to be its "business" and that only its administrative activities, particularly its taking money and issuing reservations, all of which occur in Utah, can be considered to be its "business." It cites a number of Arizona cases in support of its contention.

First, Moki Mac quotes language from *Tax Comm'n v. Southwest Kenworth, Inc.*, 114 Ariz. 433, 438, 561 P.2d 757, 762 (App.1977), a case in which the propriety of a transaction privilege tax was considered, which states that "the business activities which surround the sale must occur in Arizona before the assessment of the tax is permitted." Moki Mac argues that this language means that only the type of activities that would occur in a business office can be considered "business" and because none of these types of activities occurred in Arizona, Moki Mac was not "engaged in business" in Arizona.

We find that Moki Mac has taken this language out of context and has given it a meaning not intended by this court. In *Southwest Kenworth,* we were concerned with whether the taxpayer could be taxed under the portion of the transaction privilege tax statute taxing businesses engaged in selling tangible personal property at retail. The taxpayer maintained a large office in Arizona and most of its employees were located here. The actual sales in that case had occurred outside Arizona, although negotiations for the sales had occurred in Arizona. In upholding the tax, we held that in determining whether a transaction privilege tax for selling tangible personal property should be upheld, the actual sale need not take place in Arizona as long as business activities surrounding the sale took place here. Very simply, this language was not addressed to the issue whether "business" activities are limited to activities that would occur in a business office.

Moki Mac cites other Arizona cases in which the courts found that the taxpayer's business was not subject to Arizona's transaction privilege tax because the tax fell on interstate commerce. *See, e.g., Combustion Eng'g, Inc. v. Tax Comm'n,* 91 Ariz. 253, 371 P.2d 879 (1962); *Tax Comm'n v. Murray Co.,* 87 Ariz. 268, 350 P.2d 674 (1960), *on remand,* 89 Ariz. 61, 358 P.2d 167 (1960). Neither of these cases is helpful to Moki Mac. Both involved products that were sold in another state and were delivered to customers in Ari-

zona. The fact that a company's delivery of a product in Arizona may not be sufficient activity to indicate a business presence within the state does not necessarily mean that rendering services within the state, which requires a much more prolonged presence of the company in the state, can never be considered "business" conducted within the state.

Additionally, the determination made in the above-mentioned cases, that the State may not tax sales made in interstate commerce, was based on authority later overruled by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), a case that we will examine in more detail. Thus, these Arizona cases are no longer completely reliable.

More importantly, Moki Mac's arguments completely ignore the definitional language of § 42–1301(1) that "business" includes "all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales." We find this statutory definition broad enough to cover Moki Mac's river trips in Arizona. Certainly, the activities taking place in Moki Mac's Salt Lake City office, including making reservations and receiving payments, are part of its "business." However, providing river trips is the very essence of Moki Mac's particular business endeavors. The trips are the activities that Moki Mac engages in with the object of gain, benefit or advantage.

The Arizona courts have recognized that "selling" is not the only activity that constitutes "business." As the supreme court observed about the used car business in *Commercial Standard Ins. Co. v. West*, 74 Ariz. 359, 362, 249 P.2d 830, 832 (1952):

> A person who engages in the used car business, as in any business, must concern himself not alone with selling, but with all the myriad details required to conduct such a business. That each part of the business contributes to the total success or failure is patent.

In considering Arizona's statutory definition of "business," we have recognized that it is not limited to types of activities that would surround a sale or that would take place in a business office. In *Miami Copper Co. v. Tax Comm'n*, 121 Ariz. 150, 153, 589 P.2d 24, 27 (App.1978), we stated that the taxpayer's business included both mining and smelting. Depending on the nature of the company, "business" may include a variety of activities in addition to selling a product or service.

We conclude that Moki Mac, by conducting river trips within the geographic boundaries of Arizona, was engaged in business within the state. The trial court erred in ruling that Moki Mac was not so engaged. Having reached this conclusion, we now examine the constitutional questions raised in this case that were presented to the trial court but were not addressed.

### B. Does State Taxation of Moki Mac Violate the Commerce Clause?

The Department concedes that Moki Mac's Arizona river trips constitute interstate commerce. However, as the Department points out, the blanket prohibition against state taxation of the "privilege" of engaging in commerce that is interstate, established in cases such as *Spector Motor Serv., Inc. v. O'Connor*, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), was overturned by the United States Supreme Court in *Complete Auto*. In *Complete Auto*, the Court enumerated a 4–part test to determine whether a tax is prohibited by the Commerce Clause. Under that test, a state tax does not offend the Commerce Clause if it (1) is applied to an activity that has a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. 430 U.S. at 279, 97 S.Ct. at 1079. *See also Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 156, 102 S.Ct. 894, 911, 71 L.Ed.2d 21, 41 (1982); *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 617, 101 S.Ct. 2946, 2953, 69 L.Ed.2d 884, 894 (1981).

Moki Mac does not contend that Arizona's transaction privilege tax as applied to it discriminates against interstate commerce. The Department avows that Arizona taxes in-state and out-of-state river rafting companies at the same rate, a fact that Moki Mac does not dispute.

Moki Mac does contend, however, that the three other requirements are not satisfied. We will consider each of these requirements to determine whether we can say as a matter of law that it was or was not satisfied.

■ Moki Mac argues that its activities within Arizona are insufficient to establish the necessary constitutional nexus to justify imposition of the transaction privilege tax. This argument is the same as Moki Mac's argument that it is not engaged in "business" in Arizona within the meaning of § 42–1301(1). The argument fails for the same reason: Moki Mac's business activities within the state are real and substantial.

We find the facts of this case to be clearly distinguishable from *City of Phoenix v. West Publishing Co.*, 148 Ariz. 31, 712 P.2d 944 (App.1985), in which this court found that West's activities within Phoenix were insufficient to justify the City's imposition of a privilege license tax on business activities within its city limits. West's only contact with the city was its employment of one individual who lived in Phoenix and conducted business out of his home. The home was the employee's own home and was not owned or leased by West. West maintained no offices, other facilities, or inventories in the state. None of West's publishing activities or sales activities took place in Arizona. The employee's only functions were to answer questions about West's products and to solicit sales by putting buyers in contact with West's office in Minnesota where the sale would be effected.

In contrast to what occurred in *West Publishing*, Moki Mac conducts its main money-making activity, the river trips, in Arizona. The facts presented in this case indicate that Moki Mac's employees stay in Arizona for as much as 6 months out of the year while providing river trips. Between trips the employees live in Arizona dwellings leased by Moki Mac. Not only does Moki Mac house its employees in Arizona, but it also maintains facilities in Arizona where it stores trip equipment. From these facts we conclude that Moki Mac has established a sufficient nexus with Arizona to allow the State to tax its Arizona operations.

■ Next, Moki Mac argues that Arizona's tax is not fairly related to the services provided by the State. It argues that the only services it receives from Arizona are law enforcement services from the Coconino County Sheriff's Office pursuant to its cooperative agreement with the National Park Service. Moki Mac argues that these services should not be considered because they are the National Park Service's obligation and are merely voluntarily shared by Coconino County.

We disagree with Moki Mac's characterization of the cooperative agreement as one in which Coconino County voluntarily accepts obligations belonging to the NPS. The agreement on its face recognizes that the Coconino County Sheriff's Office and the NPS have concurrent criminal jurisdiction within the park. The agreement recites that both parties, having jurisdiction to enforce laws within the park, "desire to cooperate in law enforcement within the boundaries of the park and agree that such cooperation will result in a reduction in response time, cost to the public, and will promote the public welfare and enjoyment of the area by establishing a consistent and uniform application of enforcement." This agreement makes clear that Arizona, through its political subdivision Coconino County, does in fact have obligations to persons who are within the park and that it renders services to such persons in fulfillment of these obligations.

Moreover, Moki Mac totally ignores other services rendered to its employees and customers by the State that aid it in delivering the river trips. The State maintains the highways over which Moki Mac's employees and customers must travel to and from the trip sites. Moki Mac enjoys police

protection for its leased property and for its employees who seasonally reside in its leased dwellings. No doubt Moki Mac receives numerous other services while its employees and customers are within the state, particularly in connection with its leased property, benefits which afford the "enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." *Commonwealth Edison,* 453 U.S. at 623, 101 S.Ct. at 2956, quoting *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 521–23, 57 S.Ct. 868, 878–79, 81 L.Ed. 1245 (1937).

We are satisfied that Moki Mac receives sufficient benefits from the State to justify imposition of the transaction privilege tax. The State is not required to show a dollar-for-dollar return of tax money in the form of benefits. *See Thomas v. Gay,* 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740 (1898); *Peabody Coal,* 761 P.2d at 1098.

■ Moki Mac also alleges that the tax is not fairly apportioned. Moki Mac does not dispute that the Department seeks to impose its tax solely on the Arizona river trips and is not seeking to tax river trips occurring in other states. It argues, though, that Utah has a provision in its tax code under which the Utah taxing authorities may seek to assess a tax for Moki Mac's sale of river trips including the trips taken in Arizona. It argues that the Arizona tax should not be allowed because of what it terms "a real and distinct possibility" that it will be subjected to multiple taxation that would have a direct effect on interstate commerce.

The flaw in Moki Mac's argument is obvious. It has not shown that multiple taxation exists, only the possibility that it might exist in the future. The United States Supreme Court has said on the issue of multiple taxation of interstate commerce that it will not deal in abstractions and must be shown that a multiple burden actually exists. *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 463, 79 S.Ct. 357, 365, 3 L.Ed.2d 421, 430 (1959). The Court has also recognized that errors of apportionment that may lead to multiple

burdens may be corrected when they occur. *Washington Department of Revenue v. Association of Washington Stevedoring Cos.,* 435 U.S. 734, 746, 98 S.Ct. 1388, 1397, 55 L.Ed.2d 682, 694 (1978).

Because the sales activity for the Arizona river trips occurs in Utah, it may well be that Utah at some time will seek to tax Moki Mac's business activities, including its sale of river trips conducted in Arizona. Should this happen, Arizona will not lose its right to tax Moki Mac for engaging in business in Arizona, but the two states will have to fairly apportion the tax on Moki Mac's business activities. No apportionment is required now because multiple taxation has not been shown to exist.

Having concluded that no fact issue is presented to call into question whether Arizona's taxation of Moki Mac's Arizona river trips offends the Commerce Clause, we proceed to Moki Mac's final argument that state taxation is preempted by federal regulation.

### C. *Is State Taxation of River Rafting Trips Within the Grand Canyon Preempted by Federal Regulation?*

■ Moki Mac argues that the federal government has so pervasively regulated activities taking place within Grand Canyon National Park that the State may not impose a tax on activities taking place there. In support of this contention, Moki Mac points out that the Park was established by federal statute, 16 U.S.C. §§ 221, *et seq.* Moki Mac cites § 222 as reserving to the federal government the regulation of concessionaires operating within the Park. We note that the relevant portions of § 222 provide merely that the administration, protection, and promotion of the Park "shall be exercised, under the direction of the Secretary of the Interior, by the National Park Service," and that all concessions and privileges "for the accommodation or entertainment of visitors shall be let at public bidding."

A state may not impose its laws in an area that is so tightly regulated by the federal government that no room exists for taxation or regulation by the states. *War-*

*ren Trading Post Co. v. Arizona Tax Comm'n,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); *see also Department of Revenue v. Hane Constr. Co.,* 115 Ariz. 243, 245, 564 P.2d 932, 934 (App.1977). It is equally well settled that "[p]re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 264–65 (1981), quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963).

We do not find from the statutes cited any intent by Congress to preempt Arizona's taxation of Moki Mac's river trips conducted within the Park. Congress has expressly permitted states to levy sales or use taxes on activities occurring in a federal area situated within a state. 4 U.S.C. § 105(a). Moki Mac has not pointed to anything specific in the federal statutes that would conflict with Arizona's imposing a transaction privilege tax on Moki Mac's river trips.

In exacting its tax, Arizona does not interfere with the federal government's authority to permit Moki Mac to conduct its activities within the Park. The propriety of a transaction privilege tax does not depend on whether the state can lawfully permit or prohibit a business from operating on federal land, but rather upon whether the business by its operation within the geographical boundaries of the state is the beneficiary of services rendered by the state. *Cf. Peabody Coal,* 761 P.2d at 1097. We are not persuaded that federal regulation of the Park preempts the State from imposing its transaction privilege tax in this instance.

### 3. *Conclusion*

We hold that Moki Mac's river trips conducted in Arizona on the Colorado River constitute "engaging in business" in this state and fall within the purview of A.R.S.

§ 42–1309(A)(1). Further, taxation of these river trips conforms to constitutional constraints. We reverse the judgment of the trial court and remand for determination of the amount of interest accrued and for entry of judgment against Moki Mac for the tax deficiency, including accrued interest.

GREER and GRANT, JJ., concur.

NOTE: The Honorable Robert J. Corcoran, Justice of the Arizona Supreme Court, has been authorized by Administrative Order No. 89–3 of the Chief Justice, to participate in the resolution of this case which was previously assigned to him as a judge of this Court or to his department before Thursday, January 5, 1989.